*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0410p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DALE STEWART,

*Petitioner-Appellant,*

*v.*

No. 05-4635

JAMES L. ERWIN,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00201—Herman J. Weber, District Judge.

Argued: July 24, 2007

Decided and Filed: October 9, 2007

Before: BATCHELDER and DAUGHTREY, Circuit Judges; ROSEN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Christopher J. Pagan, REPPER, POWERS & PAGAN, Middletown, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee. **ON BRIEF:** Christopher J. Pagan, REPPER, POWERS & PAGAN, Middletown, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

ROSEN, District Judge.

## I. *INTRODUCTION*

Petitioner/Appellant Dale Stewart appeals from an order of the United States District Court for the Southern District of Ohio denying his petition for a writ of habeas corpus. In September of 2000, Stewart pled guilty in an Ohio state court to two counts of sexual battery, and he was

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

sentenced in October of 2000 to consecutive four-year terms on each count, for a total of eight years' imprisonment. After an initial appeal resulted in a remand to the trial court for resentencing, Stewart served a subpoena upon the Butler County Probation Department that sought the production of, among other items, the victim impact statements that the trial court had considered at his original sentencing hearing. The trial judge granted the State's motion to quash this subpoena, and neither Stewart nor his counsel has ever been allowed to review the victim impact statements. Stewart then was resentenced in August of 2001 to the same two consecutive four-year terms of imprisonment.

After exhausting his state remedies, Stewart filed a habeas petition in federal district court pursuant to 28 U.S.C. § 2254, alleging, *inter alia*, that he was denied due process of law because he was not given the opportunity to review, rebut, and explain the entire body of information that the sentencing court relied upon to justify its imposition of an eight-year prison term. The district court denied the habeas petition but, on the same day, granted Stewart's motion to expand the habeas record and ordered the State of Ohio to file, under seal, the presentence report and victim impact statements from Stewart's case. The custodian of these documents has thus far refused to comply with the district court's order, and these documents do not appear in the record on appeal. The district court also subsequently granted a certificate of appealability as to Stewart's due process challenge, and this is the sole claim presently before us.

As explained below, we agree with the district court that there is no clearly established federal constitutional right to full disclosure of all information used by a trial judge in determining a defendant's sentence. Nonetheless, we recognize, as did the court below, that there *is* a clearly established federal due process protection against a trial court's reliance on materially false information at sentencing. Unlike the district court, we find ourselves unable to ascertain whether this latter sort of due process violation might have occurred here, where a portion of the materials used in determining Stewart's sentence has been withheld from federal court review, and where the limited record before us suggests a reasonable possibility that at least some of this sentencing information might have been erroneous. Consequently, we reverse the district court's order denying Stewart's petition for a writ of habeas corpus and remand for additional proceedings, with further instructions that the writ should be granted if the State fails to supplement the record as ordered by the district court within *forty-five (45) days* of the date of this opinion.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

On August 15, 2000, the prosecuting attorney for Butler County, Ohio, filed a bill of information charging Petitioner/Appellant Dale Stewart with two counts of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(9). At his arraignment on September 28, 2000, Stewart pled guilty to both counts. The trial court sentenced Stewart to consecutive terms of four years' imprisonment on each count, fined him $10,000, and adjudged him a sexually-oriented offender. Stewart appealed, and the Ohio Court of Appeals remanded the case for resentencing upon finding that the trial court had failed to specify the basis for a sentence greater than the statutory minimum.

Before resentencing, Stewart subpoenaed the Butler County Probation Department to provide him with a number of materials, including the victim impact statements that the trial court had reviewed and considered at his initial sentencing. The trial court granted the State's motion to quash the subpoena and, on August 16, 2001, resentenced Stewart to the same eight-year term it had originally imposed.

On August 12, 2002, the Ohio Court of Appeals affirmed this sentence. In so ruling, the court rejected as "speculative" and "not supported by the record" Stewart's contention that the trial court had impermissibly "rel[ied] upon the secret information contained in the victim impact statements." *State v. Stewart,* 775 N.E.2d 563, 567 (Ohio Ct. App. 2002). Instead, the state appellate court stated that it had reviewed the record — including the presentence report ("PSI"),

psychological evaluations, and victim impact statements — and found that, while the trial court had considered the victim impact statements, "the facts ultimately relied on by the trial court in sentencing [Stewart] were otherwise reflected in the psychological evaluations and the PSI." *Id.* Because Stewart and his counsel had been given access to these latter materials, the Ohio Court of Appeals concluded that the trial court had not "abuse[d] its discretion in denying [Stewart] access to the victim impact statements." *Id.* Although Stewart's challenge rested in part upon federal due process grounds, the state appellate court did not discuss the United States Supreme Court and federal appellate decisions that Stewart cited in support of this claim, but instead stated in cursory fashion (and with citation only to Ohio court rulings) that "we find no violation of due process." *Id.* at 565. On January 15, 2003, the Supreme Court of Ohio dismissed Stewart's appeal as not involving any substantial constitutional question.

After unsuccessfully seeking post-conviction relief in the state courts, Stewart commenced this federal habeas proceeding on March 23, 2003, filing a petition under 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio. In an opinion filed on November 4, 2005, the district court adopted a magistrate judge's report and recommendation that Stewart's petition be denied, but issued a certificate of appealability as to Stewart's due process claim. The district court also granted Stewart's motion to expand the habeas record, ordering the State of Ohio to file, under seal, the PSI and victim impact statements that had been included in the record on Stewart's direct appeal to the Ohio Court of Appeals. Regrettably, the custodian of these materials — who, we were informed at oral argument, is the trial judge who presided over Stewart's sentencing — has thus far refused to comply with the district court's order and, as a result, these items are not contained in the record on appeal.

## III. *ANALYSIS*

### A.     The Standards Governing Federal Habeas Review of Stewart's Due Process Challenge

As a general matter, we "review[] a district court's decision regarding a writ of habeas corpus de novo." *Ege v. Yukins*, 485 F.3d 364, 371 (6th Cir. 2007). "Factual findings made by the district court are reviewed for clear error unless the factual determinations are made based on state court documents," in which case "the factual findings are reviewed de novo." *Id.*

Because the federal habeas petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of AEDPA govern here. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied,* 544 U.S. 928 (2005). In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that

are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 10 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534-35 (2003) (quoting *Williams*, 529 U.S. at 413, 120 S. Ct. at 1523); *see also Bell*, 535 U.S. at 694, 122 S. Ct. at 1850. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21, 123 S. Ct. at 2535 (citations omitted).

Section 2254(d)(1) limits a federal court's habeas review to the clearly established federal law as set forth by the Supreme Court at the time the state court rendered its decision. *See Williams*, 529 U.S. at 412, 120 S. Ct. at 1523; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172 (2003). Yet, while the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002).

Compliance with § 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (per curiam); *see also Mitchell*, 540 U.S. at 16, 124 S. Ct. at 10. However, "where the state court decides a claim on the merits but does not articulate the reasons for its decision," we are "'obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Daniels v. Lafler,* 192 F. App'x 408, 419 (6th Cir. 2006) (quoting *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000)). We emphasized in *Harris* that this "independent review" is "not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Harris,* 212 F.3d at 943.

In this case, when the Ohio Court of Appeals rejected Stewart's federal due process challenge, it did not articulate a basis in federal law for doing so. Instead, it cited only an Ohio statute permitting a trial court to withhold victim impact statements at its discretion, as well as two state court cases applying this statute, without any discussion of any possible federal constitutional questions. Under *Harris*, then, deference is owed only to the result reached by the Ohio Court of Appeals, and not its reasoning, and this court must conduct an independent review of the record and the law to determine whether the state court's ruling comports with the requirements of § 2254(d). *Id.* We now turn to this inquiry.

**B.** **The Ohio Court Did Not Reach a Decision Contrary to Clearly Established Federal Law in Rejecting Stewart's Claim That He Was Entitled to the Disclosure of All Information Used to Determine His Sentence.**

The due process claim advanced in Stewart's federal habeas petition rests, at least in part, upon the proposition that the Due Process Clause of the Fourteenth Amendment ensures his opportunity to review, rebut, and explain all of the evidence — and, in particular, the victim impact statements — that the Ohio trial judge considered in determining his sentence. On this theory, the trial court violated Stewart's right to due process by relying upon the victim impact statements without disclosing them to him or his counsel. Stewart contends that this right to full disclosure is

recognized in a number of Supreme Court rulings. Accordingly, a review of these decisions is in order.

Stewart first points to *Townsend v. Burke*, 334 U.S. 736, 68 S. Ct. 1252 (1948), an appeal from a state court's denial of habeas corpus relief. The defendant in that case pled guilty to charges of robbery and burglary and was immediately sentenced in the same proceeding to a ten-to-twenty-year term of imprisonment, all without the benefit of counsel. As grounds for its sentencing decision, the trial court recited a number of prior charges brought against the defendant, but failed to acknowledge that one of these charges had been dismissed and that the defendant had been acquitted of two others. In finding a due process violation, the Supreme Court reasoned that the defendant's sentence rested on a foundation which was "extensively and materially false," and which the defendant "had no opportunity to correct by the services which counsel would provide." *Townsend,* 334 U.S. at 741, 68 S. Ct. at 1255. The Court concluded that "[s]uch a result, whether caused by carelessness or design, is inconsistent with due process of law." *Id.*; *see also United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 592 (1972) (following *Townsend* in overturning "a sentence founded at least in part upon misinformation of constitutional magnitude," where the sentencing judge had considered two prior convictions that had subsequently been invalidated for violation of the defendant's right to counsel).

*Townsend* and its progeny are generally viewed as having established a due process "requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false." *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974); *see also Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir.) (citing "the general rule that a violation of due process exists when a sentencing judge relies upon erroneous information" (internal quotation marks and citations omitted)), *cert. denied,* 546 U.S. 886 (2005); *United States v. Taylor*, 768 F.2d 114, 121 (6th Cir. 1985) ("[W]hen a trial judge relies on materially false or unreliable information in sentencing a defendant, the defendant's due process rights are violated." (internal quotation marks and citation omitted)); *United States v. Curran*, 926 F.2d 59, 61 (1st Cir. 1991) ("It is well settled . . . that a defendant has a due process right to be sentenced upon information which is not false or materially incorrect.").

Yet, we do not read *Townsend* and its progeny as having clearly established the considerably broader principle that Stewart seeks to invoke here — namely, that ***all*** information relied upon by a sentencing court must be disclosed to the defendant, whether or not it is later determined to be materially false. To the contrary, the federal appellate courts that have considered this issue have uniformly concluded that *Townsend* and *Tucker* do ***not*** recognize such a federal due process right to full disclosure. In *Curran,* 926 F.2d at 61-62, for example, the First Circuit opined that it was unclear whether "due process compels an opportunity to inspect and challenge the information to be relied upon by the sentencing court," and observed that there was "no judicial precedent which holds that the Due Process Clause requires disclosure of all information relied upon by the sentencing court." Similarly, in *United States v. Nappi,* 243 F.3d 758, 760, 770 (3d Cir. 2001), the Third Circuit found that the district court had violated Fed. R. Crim. P. 32 by relying on a state presentence report at sentencing without disclosing this document to the defendant or his counsel, but nonetheless concluded that this error was "not of constitutional dimension" absent a showing that "the information in the report was inaccurate or false, or that the [district court] mischaracterized any of the information it cited from" the report. *See also United States v. Hamad,* 495 F.3d 241, 247 (6th Cir. 2007) ("[I]t remains unclear whether the Constitution gives sentencing courts a free hand to rely on undisclosed — or, to be more dramatic, secret — accusations that increase an individual's sentence."); Fed. R. Crim. P. 32, advisory committee notes to 1966 amendments ("It is not a denial of due process of law for a court in sentencing to rely on a report of a presentence investigation without disclosing such report to the defendant or giving him an opportunity to rebut it.").

Indeed, when confronted with a case in which a district court relied on *ex parte* communications from victims of a bank robbery in determining a defendant's sentence, a panel of this court stopped short of recognizing a federal due process right to disclosure of these communications, and instead held, in a split decision, that the district court had violated Fed. R. Crim. P. 32 by citing the victims' letters at sentencing without disclosing them to the defendant or his counsel. *United States v. Hayes,* 171 F.3d 389, 390-93 (6th Cir. 1999). In so ruling, the panel majority observed that Rule 32 is intended to "protect[] the right to due process by requiring disclosure of most information relied upon at sentencing," but acknowledged and expressly agreed with the First Circuit's determination in *Curran* that "neither Rule 32 nor the Due Process Clause requires that absolutely everything be disclosed." *Id.* at 392-93.

Notably, the dissenting judge in *Hayes* was careful to "distinguish between the majority's explicit holding in this case, *i.e.,* that the sentencing court violated Rule 32 in failing to turn over the letters or a summary of their contents . . . , and a more broad assertion, not explicitly relied upon by the majority, that the actions violated constitutional due process." 171 F.3d at 396 (Batchelder, J., dissenting). In the dissent's view, it was "Rule 32, and not constitutional due process, that provide[d] the basis for the majority's decision," and "due process d[id] not compel the result" reached in that case. *Id.*; *see also United States v. Meeker,* 411 F.3d 736, 741 (6th Cir. 2005) (finding that a district court's reliance at sentencing on letters from victims that the defendant had no prior opportunity to review violated Rule 32, "a procedural rule that the Sixth Circuit has recognized as 'protect[ing] the right to due process by requiring disclosure of most information relied upon at sentencing'" (quoting *Hayes,* 171 F.3d at 392)); *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir. 1998) (observing that the "due process right not to be sentenced on the basis of information that is materially false" is "protected by affording the defendant notice of and an opportunity to respond to information on which the court intends to rely in imposing sentence").

Our recent decision in *Hamad, supra,* reaffirms this distinction between the dictates of Rule 32 and the Due Process Clause. In that case, the district court received and considered, but did not share with the defendant, a "number of documents that reflect[ed] poorly on the defendant." *Hamad,* 495 F.3d at 243. Pursuant to Rule 32, the district court provided the defendant with a summary of these documents, acknowledging that the underlying materials contained a "great deal more" information, but opining that the summary was "adequate to prepare [the defendant] for the sentencing hearing" while also protecting the confidentiality of sources. *Id.* at 244.

Upon surveying the pertinent Supreme Court decisions, including *Townsend,* that address the scope of a defendant's constitutional protections at sentencing, we concluded that "[t]he upshot is this: while a defendant may not have the constitutional right to *confront* the witnesses against him at sentencing, it remains unclear under modern sentencing practices what due process right he has to *know* who these witnesses are and what they have said, to *respond* meaningfully to the accusations or otherwise to *ensure* that the accusations are accurate." *Id.* at 247. We found it unnecessary, however, to "determine the scope, or even the existence, of this due process right," where we could instead follow "the path of least constitutional resistance" by construing Rule 32 in a manner that avoided any potentially "serious due process question." *Id.* at 247-49. In particular, we interpreted Rule 32 to require, in cases where a "summary — due to a promise of confidentiality and the nature of the charge — cannot offer the defendant sufficient information to form a meaningful response," that a district court must either "obtain permission to disclose" the confidential information or "refrain from using" this information at sentencing. *Id.* at 248-49.

From *Hayes* to *Hamad,* then, we have remained unwilling to recognize the broad due process right to full disclosure that Stewart urges upon us here. Neither have our sister circuits found that the Due Process Clause grants such an entitlement. Thus, even if we could look to our own precedents or the decisions of other circuits, as opposed to only Supreme Court rulings, in determining the "clearly established" law on this subject, it could not be said that the state court

ruling in this case was contrary to or an unreasonable application of any clearly established principle of federal law recognizing a defendant's due process right to full disclosure of the information relied upon by a sentencing court.

Stewart fares no better in his appeal to the decision in *Gardner v. Florida,* 430 U.S. 349, 97 S. Ct. 1197 (1977), as a source of the posited due process right to full disclosure. In that case, a state trial court's imposition of a death sentence was based in part upon information in a presentence investigation report that was not disclosed to the defendant or his counsel. The Supreme Court held that the defendant "was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Gardner,* 430 U.S. at 362, 97 S. Ct. at 1207. Similarly, Stewart argues in this case that he was sentenced on the basis of information that he had no opportunity to deny or explain.

Yet, the decision in *Gardner* is replete with references to the unique demands and requirements of ***capital*** sentencing. At the outset of its analysis, for example, the Court emphasized that "death is a different kind of punishment from any other which may be imposed in the country." 430 U.S. at 357, 97 S. Ct. at 1204. Thus, while the Court recognized the states' interest in providing "an assurance of confidentiality to potential sources of information" in order to "enable investigators to obtain relevant but sensitive disclosures from persons unwilling to comment publicly about a defendant's background or character," it nonetheless found that this interest was outweighed in capital cases by the need to ensure the reliability of information that provides "the basis for a death sentence." 430 U.S. at 358-59, 97 S. Ct. at 1205. Similarly, in discounting the State's argument that "trial judges can be trusted to exercise their discretion in a responsible manner, even though they may base their decisions on secret information," the Court emphasized "the importance of giving counsel an opportunity to comment on facts which may influence the sentencing decision in capital cases." 430 U.S. at 360, 97 S. Ct. at 1206.

Accordingly, *Gardner* cannot be viewed as the source of a clearly established due process right to full disclosure of sentencing information in a non-capital case such as the present one. Indeed, the Supreme Court itself has characterized *Gardner* as holding that "[t]he Due Process Clause does not allow the execution of a person on the basis of information which he had no opportunity to deny or explain." *Simmons v. South Carolina,* 512 U.S. 154, 161, 114 S. Ct. 2187, 2192 (1994) (internal quotation marks and citation omitted). Stewart has not cited, nor has our independent review of the case law revealed, any decision in which *Gardner* was invoked to find a due process violation in a non-capital sentencing proceeding. Thus, *Gardner* does not set forth the "clearly established" federal law governing Stewart's due process claim, nor did the Ohio Court of Appeals act unreasonably in declining to extend the ruling in *Gardner* to reach the non-capital sentencing proceeding in this case.[1]

To be sure, there is a certain degree of logic to Stewart's argument that a true "due process" protection should focus on the ***process*** used at sentencing, as opposed to the more substantive question whether the information relied upon by the sentencing court was materially false or incorrect. As one judge long ago asked upon reviewing the decision in *Townsend,* "How can a due process guarantee against a sentence predicated on misinformation be viable, and not rendered

---

[1]The two other Supreme Court decisions cited in Stewart's brief on appeal are even less pertinent here. First, the ruling in *Simmons,* 512 U.S. at 163-66, 114 S. Ct. at 2193-95, like the *Gardner* decision, explicitly rests upon the unique circumstances and demands of capital sentencing — indeed, the *Simmons* Court expressly stated that "[t]he principle announced in *Gardner* . . . compels our decision today." Next, the decision in *Crane v. Kentucky,* 476 U.S. 683, 690-91, 106 S. Ct. 2142, 2146-47 (1986), is wholly inapposite here, where the Supreme Court held in that case that a state trial court had improperly excluded exculpatory evidence concerning "the environment in which the police secured [the defendant's] confession." Stewart does not claim any comparable denial of his right to introduce evidence in support of any defense to the charges brought against him.

meaningless, if the defendant has no way of determining that the sentencing judge was misadvised?" *Baker v. United States*, 388 F.2d 931, 935 n.1 (4th Cir. 1968) (Winter, J., concurring). And, as noted, this court has construed Fed. R. Crim. P. 32 as safeguarding a defendant's right to due process "by requiring disclosure of most information relied upon at sentencing." *Hayes,* 171 F.3d at 392; *see also United States v. Prescott*, 920 F.2d 139, 143 (2d Cir. 1990) ("To make [a] defendant's [due process] right meaningful, a sentencing court must assure itself that the information upon which it relies when fixing sentence is reliable and accurate.") We recognize, then, that there is much to be said for the rule advocated in Stewart's brief on appeal — namely, that a defendant should be "afforded [the] opportunity to rebut or explain evidence that [i]s utilized by the sentencing judge to impose sentence."

Yet, the brute fact remains that no Supreme Court ruling — and, indeed, no federal appellate decision — has recognized a "clearly established" due process right to such an opportunity. It follows that the Ohio courts did not act contrary to clearly established federal law, nor did they unreasonably apply this law, in rejecting Stewart's claim of a due process entitlement to disclosure of the victim impact statements used in his sentencing.

**C.      A Remand Is Necessary to Properly Assess Stewart's Claim that He Was Denied Due Process Through a Sentencing Determination that Rested in Part Upon Materially False Information.**

While, as explained, no clearly established federal law ensured Stewart an opportunity to review, rebut, and explain all of the information relied upon by the state trial court in determining his sentence, this does not conclude our inquiry. Rather, we still must determine whether the challenged state court decision comports with the more narrow, and clearly established, due process protection against sentencing determinations that rest in part upon materially false information. *See Townsend, supra,* 334 U.S. at 741, 68 S. Ct. at 1255. Although Stewart's submissions on appeal and in the court below have focused principally upon a posited due process right to full disclosure, he also appears to suggest — and his counsel confirmed at oral argument — that his due process challenge encompasses the more limited principle announced by the Supreme Court in *Townsend*. In particular, Stewart contends that the state trial court's sentencing decision was impermissibly influenced by materially false or misleading information contained in the victim impact statements that were withheld from him and his counsel. We agree that the record provides some support for this claim, but find ourselves unable to determine whether such a due process violation occurred here, where the State has not produced the victim impact statements that are essential to meaningful federal court review of this issue.

As discussed earlier, *Townsend* establishes the principle that the Due Process Clause of the Fourteenth Amendment is violated when a defendant is sentenced on the basis of materially false information. *Townsend,* 334 U.S. at 741, 68 S. Ct. at 1255; *see also Tucker*, 404 U.S. at 447, 92 S. Ct. at 592. Stewart contends that this principle is applicable here, because the trial judge justified his sentence, at least in part, on the basis of information that (i) likely was culled from the victim impact statements reviewed by the sentencing court, but yet (ii) was contradicted by other evidence in the record. For instance, Stewart points to the trial court's reference at sentencing to four victims, whereas only two victims were mentioned in the bill of information filed by the prosecutor and at the subsequent hearing at which Stewart entered his guilty plea. Additionally, the trial judge made statements at sentencing indicating that Stewart's criminal activity spanned perhaps as much as a five-year period, but the bill of information stated only that Stewart's offenses occurred "[o]n or about 1998." Stewart asserts that the sentencing court's statements regarding the number of victims and the time span of his criminal activity could only have come from the victim impact statements,

and the State has not pointed to any other portion of the record from which this information might have been obtained.[2]

If the victim impact statements were indeed the source of this information, and if this information were deemed materially false, then Stewart seemingly could establish a violation of the due process right recognized in *Townsend*. It is clear from the record that the trial judge specifically considered the victim impact statements in sentencing Stewart. Moreover, false information about additional victims and additional time periods during which Stewart engaged in criminal activity certainly would appear to be "material," particularly where the trial judge repeatedly referred to this information in determining Stewart's sentence. As observed in *Townsend*, 334 U.S. at 740, 68 S. Ct. at 1255, "[w]e are not at liberty to assume that items given such emphasis by the sentencing court, did not influence the sentence which the prisoner is now serving."

Unfortunately, we are unable to determine under the present record whether the Ohio Court of Appeals acted contrary to or unreasonably applied clearly established federal law by virtue of its failure to overturn a sentence that might have been based in part upon materially false information that Stewart had no opportunity to challenge. While Stewart posits that the sentencing court's determinations regarding the number of victims and the time span of his criminal activity must have been based upon false information contained in the victim impact statements, the only way to test this assertion is to review the victim impact statements themselves. By the same token, we have no way to confirm the State's contrary assertion in its appellate brief that all of the "facts ultimately relied upon by the trial court in sentencing Stewart were otherwise reflected in the psychological evaluations and the PSI which the defense had received," where *neither* the victim impact statements *nor* the psychological evaluations and PSI are part of the record on appeal.[3] Under these circumstances, we cannot say whether the victim impact statements necessarily were the source of any materially false information relied upon by the sentencing court, or whether any such information instead could have been gleaned from sources that Stewart and his counsel had an opportunity to review and challenge at sentencing.

To be sure, the Ohio Court of Appeals *did* do what we cannot — namely, it stated that it had reviewed the victim impact statements, and concluded that while the trial court had "considered" these materials, "the facts ultimately relied upon by the trial court in sentencing [Stewart] were otherwise reflected in the psychological evaluations and the PSI." *Stewart,* 775 N.E.2d at 567. The district court, in turn, cited this state court finding in determining that any due process violation was harmless. Not surprisingly, the State points to these determinations by the state appellate court and the district court alike in urging us to affirm the district court's denial of Stewart's due process claim.

Yet, while the state court's factual findings are cloaked with a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), our deference to the state court on this score does not demand that we rubber-stamp its findings without any independent examination of the record. Rather, Stewart is

---

[2] In his brief on appeal, Stewart further asserts that the sentencing court necessarily must have relied on the victim impact statements in determining that "the victims in this case suffered . . . serious physical, psychological, and economic harm as a result of [Stewart's] offenses." (8/16/2001 Sentencing Hearing Tr. at 44, J.A. at 145.) This determination, however, appears to rest largely upon statements of belief rather than fact, which arguably lie outside the scope of *Townsend*'s due process protection against sentencing in reliance on "materially false" information. *Cf. United States v. Turner*, 864 F.2d 1394, 1400 (7th Cir. 1989). Similarly, any information culled from the victim impact statements regarding the likelihood of Stewart re-offending would appear not to involve assertions of fact — which, by their nature, may be rebutted or shown to be false, *see Hayes,* 171 F.3d at 394 — but rather predictions of future events. *Cf. United States v. Dean*, 752 F.2d 535, 544-45 (11th Cir. 1985), *cert. denied,* 479 U.S. 824 (1986).

[3] This, of course, is despite the district court's November 4, 2005 order directing the State to file all of these materials under seal so that they could be included in the record on appeal.

entitled to habeas relief under the AEDPA standards if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Because the federal court record does not contain **any** of the pertinent materials reviewed by the Ohio Court of Appeals in making its findings — *i.e.,* the victim impact statements, the psychological evaluations, and the PSI — neither we nor the court below can possibly determine whether the state court's findings were "unreasonable" in light of a missing evidentiary record. Instead, we are left with only the parties' competing assertions that the trial court's sentencing determination was or was not based in part on information that was uniquely culled from the victim impact statements.

Although we cannot possibly resolve this dispute without access to the complete evidentiary record, it can at least be said that Stewart's position appears more consistent with the limited record that we **have** been given. This record, in particular, includes the sentencing court's repeated references to the victim impact statements — and, more generally, to the harm suffered by the victims, information that likely is traceable to the victim impact statements — as well as its express acknowledgment that it had considered these statements in determining Stewart's sentence. Thus, while federal habeas review of a state court's factual findings presumably is not triggered by bare speculation that these findings might be open to question in some respect, *cf.* 28 U.S.C. § 2254(e)(1) (providing that the "presumption of correctness" of a state court's factual findings may be rebutted only by "clear and convincing evidence"), we are confident that Stewart has made a threshold showing of the need for such an inquiry here. It follows that the State must provide the record that is essential for such review — namely, the "evidence presented in the State court proceeding " that formed the basis for the pertinent state court factual findings, *see* 28 U.S.C. § 2254(d)(2) — so that the district court may assess the reasonableness of these findings on remand. *See* 28 U.S.C. § 2254(f) (imposing a duty upon the State to produce the pertinent record where the applicant for habeas relief is unable to do so).

Another panel of this court ordered similar relief in *Collins*, *supra,* a habeas action with facts somewhat analogous to those presented here. The defendant in that case had been convicted of rape, and the trial judge relied at sentencing "upon information that the [defendant] had raped another victim." *Collins,* 493 F.2d at 346. The defendant was not "accorded an opportunity [at sentencing] to rebut this information," but asserted in support of his habeas petition that the information was false. *Id.* Upon noting the absence of any "finding of fact regarding the truth or falsity of the derogatory matter relied upon," this court found itself "unable to say whether the [defendant] is entitled to be resentenced" under the rule established in *Townsend. Id.* at 345-46. Rather, the court held that the case should "be remanded to the District Court for a resolution of this issue of fact." *Id.* at 346. Likewise, a remand is necessary here to determine whether the Ohio Court of Appeals unreasonably concluded that the factual predicate for such a *Townsend*-based due process claim is lacking in this case.

Finally, we note that the district court's finding of harmless error does not obviate the need for a remand. As the district court correctly recognized, this harmless error analysis is governed by the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710 (1993), where the Ohio Court of Appeals found no due process violation and thus did not consider whether any such error was harmless. *See Fry v. Pliler,* 127 S. Ct. 2321, 2328 (2007).[4] Under this standard, a

---

[4]Stewart suggests that the trial court's error in this case was "structural," and that the harmless error standard therefore is inapplicable. *See Brecht,* 507 U.S. at 629-30, 113 S. Ct. at 1717. This proposed characterization is not supported by the relevant Supreme Court precedent, however, which restricts the category of "structural" errors only to those defects, such as deprivation of counsel, which "infect the entire trial process" and thus completely frustrate harmless error review. *Brecht*, 507 U.S. at 630, 113 S. Ct. at 1717. The claimed due process violation here is readily amenable to harmless error analysis, simply by reviewing the record and determining the extent to which Stewart's sentence was affected by the trial court's reliance on materially false information that Stewart had no opportunity to rebut

constitutional error provides a basis for habeas relief only if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623, 113 S. Ct. at 1714 (internal quotation marks and citation omitted).[5] The Supreme Court has emphasized, however, that "when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S. Ct. 992, 999 (1995).

It is difficult to see, under the present record, how a court could declare with any degree of confidence that any due process violation was harmless. As noted, the record ***does*** indicate with sufficient clarity that the state trial court considered the victim impact statements in determining Stewart's sentence. What it does ***not*** reveal, however, is whether the Ohio Court of Appeals was correct in concluding — and, in turn, whether the district court properly accepted as the factual predicate for its determination of harmless error — that "the facts ultimately relied upon by the trial court in sentencing [Stewart] were otherwise reflected in the psychological evaluations and the PSI." *Stewart,* 775 N.E.2d at 567. As explained, the reasonableness of this finding is beyond the power of this court to ascertain, where the evidence upon which it rests is missing from the federal court record. If, in fact, any information that the sentencing court culled from the victim impact statements could also be found in other materials that ***were*** disclosed to Stewart and his counsel, then it could properly be said that Stewart's lack of access to the victim impact statements was harmless, where the availability of other, comparable materials ensured his opportunity to challenge any materially false information upon which the trial court might have relied in determining his sentence. Unfortunately, this factual question is unanswerable under the present record.

The ability — or lack thereof — to resolve such a factual question accounts for the different outcomes of this court's decisions in *Hayes* and *Meeker, supra.* In *Hayes,* 171 F.3d at 394, the Government argued that any error in the district court's failure to disclose victim impact statements to the defendant was harmless, where the defendant had not "specif[ied] *how* he would have responded to the letters had he received notice of them." We emphatically rejected this contention:

> We are not sure how he can be expected to do so. The letters are not part of the record of this case, and so far as we are aware [the defendant] and his attorney have yet to see them. The government asks that [the defendant] do exactly what he has been denied the opportunity to do: respond to the evidence submitted against him. We will not insist that [the defendant] rebut evidence he has never seen in order to establish that he was prejudiced by the district court's reliance on that evidence.

*Id.* We also declined to "accept on faith the government's assertion that the letters are similar to evidence presented at trial," where the "district court did not read the letters into the record or even have them in the courtroom during the sentencing hearing," but instead pronounced its sentence "based on what the court remembered about the letters." *Id.* "Given the district court's own emphasis on the letters," this court was unwilling to "assume that they contained nothing new." *Id.* at 395.

In *Meeker,* 411 F.3d at 741-43, by contrast, we held that the defendant's substantial rights were not affected by the district court's failure to disclose the victim impact statements it had reviewed in determining that an upward departure was appropriate. In so ruling, we noted a "critical difference" between the facts of that case and the facts presented in *Hayes* — namely, that the defendant in *Meeker* "had access to all of the victims' letters in preparing his appeal." *Id.* at 742.

---

or explain.

[5]Although *Brecht* speaks of an effect or influence upon "the jury's verdict," the district court properly found that this standard applies as well to constitutional errors in the sentencing process. *See Powell v. Collins,* 332 F.3d 376, 395 (6th Cir. 2003).

We explained that "where a defendant has had an opportunity to review the evidence relied upon by the district court, an explanation of how the defendant was prejudiced is required." *Id.* Because the defendant could not show how he could have "effectively rebut[ted]" the "heart-wrenching descriptions of his victims' emotional distress that were recounted in many of the letters," this court found that he had "failed to demonstrate that he was prejudiced" by the district court's failure to disclose the letters. *Id.* at 742-43.

While the "harmless error" standard that governs this case differs somewhat from the "plain error" review conducted in *Hayes* and *Meeker,* the reasoning of those cases nonetheless is instructive here. Just as the defendant in *Hayes* could not be expected to explain how he could have rebutted information that was never disclosed to him, even on appeal, we cannot insist that Stewart demonstrate that victim impact statements that he has never seen had a substantial and injurious effect or influence upon the determination of his sentence. Neither can we resolve the key factual question underlying a harmless error analysis — namely, whether the Ohio Court of Appeals unreasonably concluded that all of the facts relied upon by the sentencing court were reflected in the materials provided to Stewart and his counsel — where the evidentiary record upon which this factual finding was based has not been made available for federal court review. Thus, a remand is necessary **both** to determine whether a due process violation occurred **and** to consider whether any such error was harmless under the *Brecht* standard.

But, of course, a remand alone is not enough, absent supplementation of the record to permit meaningful habeas review. As we have explained, the district court must be able to examine the complete record considered by the state trial court in determining Stewart's sentence — including the victim impact statements, the psychological evaluations, and the PSI — in order to decide (i) whether the Ohio Court of Appeals reasonably concluded on the basis of this record that all of the facts relied upon by the sentencing court were reflected in the materials disclosed to Stewart and his counsel, and (ii) whether Stewart's sentence was based in part on materially false information that was derived from a portion of the record — in particular, the victim impact statements — to which Stewart and his counsel were denied access. The district court already has ordered that the record be supplemented, and it is now up to the State to see that this order is carried out.

We recognize that it evidently is not the State's fault that the record has yet to be supplemented in accordance with the district court's order. Rather, we were advised at oral argument that the pertinent materials are in the possession of the trial judge, who has so far refused to turn them over. We are frankly at a loss to discern a principled basis for the trial court's willingness, on the one hand, to make these materials available for review by the state appellate court on Stewart's direct appeal, but its refusal, on the other hand, to permit these materials to be filed under seal with the federal district court. More fundamentally, we are dismayed that a judicial officer apparently has unilaterally chosen to disobey a direct and reasonable order issued by a court that unquestionably is acting within its jurisdictional authority to ensure that its rulings rest upon a complete and proper evidentiary foundation.

In any event, it is quite clear that the State, rather than Stewart, must bear the burden of producing these materials for federal court review, and must suffer the consequences of any continued failure to do so. *See* 28 U.S.C. § 2254(f). Absent the supplementation ordered by the district court, Stewart cannot fairly be expected to establish the necessary elements of his claim for federal habeas relief. Consequently, if the State does not comply with the district court's November 4, 2005 order to supplement the record within **forty-five (45) days** of the date of this

opinion, then the district court is directed on remand to grant Stewart's petition for a writ of habeas corpus.[6]

## IV. *CONCLUSION*

For the reasons set forth above, we REVERSE the district court's order denying Petitioner/Appellant Dale Stewart's petition for a writ of habeas corpus and REMAND for additional proceedings in accordance with this opinion, with further instructions that the district court shall grant Stewart's petition and issue the writ if the State fails to supplement the record as ordered by the district court within ***forty-five (45) days*** of the date of this opinion.

---

[6] As we have noted, the district court's order calls for the filing of the pertinent materials ***under seal***. Nothing in our opinion should be construed as dictating that these documents necessarily must be disclosed to Stewart or his counsel. It may be the case, for example, that the district court is able to confirm from its own *in camera* review of the record that the Ohio Court of Appeals was correct in its finding that the facts relied upon by the sentencing court were reflected in the materials provided to Stewart and his counsel. Alternatively, the district court's review might lead to the conclusion that a *Townsend* violation ***did*** occur — *i.e.,* that Stewart's sentence was based in part upon materially false information contained in a portion of the record that was withheld from him and his counsel. Under either of these scenarios (and doubtless others), it might prove unnecessary to provide copies of the victim impact statements to Stewart or his counsel. We leave the decision regarding the disclosure of these materials, whether in full or in redacted form, to the sound discretion of the district court, with an appropriate opportunity for input from the parties.