NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0587n.06

No. 05-6798

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 02, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| RONEIL CORNELISON, | ) ) ) ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| JOHN MOTLEY, Warden, | ) ) | |
| Respondent-Appellee. | ) ) ) | |

Before: MERRITT, GIBBONS, ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Roneil Cornelison appeals the district court's order denying his *habeas* petition under 28 U.S.C. § 2254. For the following reasons, we affirm the district court's decision.

I.

On January 15, 1998, Cornelison was indicted by a grand jury for his involvement in the November 4, 1997, beating death of Ricky Noland in Richmond, Kentucky. Following his arrest, Cornelison gave a videotaped statement ("the confession tape") in which he was informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), confirmed that he understood those rights, and proceeded to make self-incriminating statements. Cornelison filed a motion to suppress his confession. The state trial court reviewed the confession tape, held an evidentiary hearing at which the tape was played and the police officer testified, and found the following facts:

> In this case, the detective commences reading the requisite *Miranda* rights to the defendant. The defendant inquires, "What if I want my lawyer present first?" The detective responds[,] "that's up to you." Detective Pedigo repeated for the defendant that he had the right to stop the questioning at any time in order to have a lawyer present. After some conversation, the defendant commences writing on the waiver form and then says, "I would like to have a lawyer, though, I want that on the record" and writes on the waiver form. . . . [At the suppression hearing,] Detective Pedigo testified that he was unsure and wanted to clarify the defendant's intent when he next asked, "Do you want your lawyer present or do you want to talk to us . . . whichever you want to do." Then the defendant completed the form and laid down the pen. Detective Pedigo responded with, "Does that mean that you want to talk to us?"; and the defendant nods his head. The detective says, "Is that a yes?", and the defendant answers, "Yes."

Joint Appendix ("JA") 48–49.

Cornelison then gave a statement in which he confessed that he "got his kicks in" when he and two others beat Noland. The trial court denied the motion to suppress, finding that Cornelison's statements were merely a clarification of his rights and not an invocation of his right to counsel. The trial court noted that Cornelison was filling out the waiver form when he made reference to counsel "on the record" and held that a reasonable officer would not have understood Cornelison to have invoked his Sixth Amendment right to counsel.

A jury found Cornelison guilty of murder as a principal or an accomplice, and he received a 30-year sentence. He appealed his conviction to the Kentucky Supreme Court, which affirmed his conviction. Among the issues it decided, the Kentucky Supreme Court affirmed the trial court's denial of Cornelison's suppression motion, relying upon a videotape of the suppression hearing ("the suppression hearing tape"). In a footnote, the court remarked that Cornelison had made a motion to supplement the record with the original confession tape, but "it appears as though said motion was never filed and thus the record contains only a videotape of the suppression hearing during which

the taped statement was made. As such, the quality of the statement is poor and portions are unintelligible." JA 164 n.1.

The state supreme court then recounted the exchange between the police and Cornelison:

A review of [Cornelison's] statement reflects that after [he] was read his *Miranda* rights, he inquired, "What if I want my lawyer present first?" The detective informed [Cornelison] that the decision was up to him and that he had the right to stop the questioning at any point if he wanted an attorney present. The conversation continued with the detective explaining to [Cornelison] the waiver of rights form. After a short period of time, [Cornelison] appears to sign the form while stating, "I would like to have a lawyer, though, I want that on the record." The detective thereafter asked, "Do you want your lawyer present or do you want to talk to us?" [Cornelison] then completed the form and laid down the pen. The detective stated, "Does that mean you want to talk to us?" [Cornelison] nodded his head affirmatively and then responded "yes."

JA 164–65.

The court determined that Cornelison "inquired about having an attorney present . . . while signing the waiver form." JA 165. Although Cornelison may have used an attorney had one been present, the court found that "he preferred to continue talking." JA 165. The court then applied *Miranda* and *Davis v. United States*, 512 U.S. 452 (1994) (holding that an "ambiguous or equivocal" request for counsel does not require authorities to cease questioning), and held that Cornelison's "seeking information about an attorney while signing the waiver form created an ambiguity and, as a result, the detective was justified in his belief that [Cornelison] was not unequivocally invoking his right to counsel but rather clarifying the existence and effect of that right." JA 166.

The Kentucky Supreme Court denied Cornelison's motion to supplement and for rehearing, which was filed after the court issued its opinion. In this motion, Cornelison's counsel stated that he was unable to obtain a copy of the confession tape from Cornelison's relatives and chose to

examine closely the suppression hearing tape. He conceded that the suppression hearing tape is "certainly less than easily audible" and asked the court to reconsider its opinion once the confession tape was found. Cornelison did not submit the original confession tape as part of the record before the state supreme court and, instead, relied upon the suppression hearing tape that the state supreme court considered. Thereafter, Cornelison, *pro se*, filed a post-conviction motion to vacate the conviction and sentence pursuant to Ky. R. Crim. P. 11.42, which the state courts denied. JA 209–10. His conviction became final on March 10, 2004.

In December 2004, Cornelison filed this *habeas* action in federal district court. Among his claims, he alleged that the state courts erroneously denied his motion to suppress the confession. Cornelison's counsel prepared a transcript of the confession tape for the federal proceedings, and, although his petition refers to "an intelligible copy of the videotaped interrogation," the district court docket does not indicate that Cornelison ever filed the confession tape itself with the district court.

The district court adopted the magistrate judge's recommendation to dismiss the petition in its entirety on the merits. On the suppression issue, the district court held that the state supreme court had correctly applied *Miranda* in affirming Cornelison's conviction. JA 233–40. The district court also adopted the magistrate judge's conclusion that, under *Estelle v. McGuire*, 502 U.S. 602 (1991), *habeas corpus* does not lie to review questions of state evidentiary law. JA 239. We granted Cornelison a certificate of appealability for two issues concerning the *Miranda* claim only. Order Granting Certificate of Appealability, *Cornelison v. Motley*, 05-6798 (6th Cir. Feb. 14, 2007).

II.

We review the decision of the district court to deny *habeas* relief *de novo*. *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq*., which prohibits federal courts from issuing writs of *habeas corpus* on claims adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the Supreme Court has explained, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court unreasonably applies governing federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The state courts' factual determinations "are presumed correct absent clear and convincing evidence to the contrary, [28 U.S.C.] § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted); *see also Fleming v. Metrish*, 556 F.3d 520,

525 (6th Cir. 2009). This presumption applies to "implicit findings of fact" deduced by the state courts from their review of the credibility of the evidence before them. *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). A state court's resolution of ambiguities in the record is entitled to "some deference from this court." *United States v. McConer*, 530 F.3d 484, 495 (6th Cir. 2008); *see also Raedeke v. Trombley*, No. 08-1407, 2009 U.S. App. LEXIS 6350, at \*13 (6th Cir. Mar. 23, 2009) (giving deference to the state court's "characterization of the testimony" because the petitioner had not rebutted the presumption of correctness afforded to the state court's findings of fact).

Cornelison argues that his request for counsel was unambiguous when he stated, according to the transcript of the confession tape made by his lawyer that was provided to the *habeas* court, "Uh, you know what I'm saying I want my lawyers to be here to know what I'm talking about first of all, you know what I'm saying," and "I would like to have a lawyer, I would like to have that on record, I would like to have my lawyer here so." Thus, he contends, the decision of the Kentucky Supreme Court constituted an "unreasonable application" of clearly established federal law under *Miranda* and *Edwards v. Arizona*, 451 U.S. 477 (1981). Cornelison requests an evidentiary hearing and the opportunity to introduce another copy of the confession tape that, he says, demonstrates that he requested counsel before giving a statement to the police. He contends that the confession tape rebuts the state courts' findings of fact by clear and convincing evidence.

The success of Cornelison's appeal depends on two questions: (1) whether he is entitled to an evidentiary hearing in the district court at which he could introduce the confession tape; and, if not, (2) whether the district court correctly concluded that the Kentucky Supreme Court's decision, on the record before it, was consistent with clearly established federal law. We conclude that he is

not entitled to an evidentiary hearing and that the decision of the state supreme court was not

contrary to, nor did it involve an unreasonable application of, governing federal law. 28 U.S.C. §

2254(d).

A.

Cornelison is not entitled to an evidentiary hearing because he has not satisfied the

"diligence" requirement of 28 U.S.C. § 2254(e)(2). AEDPA limits the ability of federal courts to

grant an evidentiary hearing. In pertinent part, the statute provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>     (A) the claim relies on—
>         (i) a new rule of constitutional law . . .; or
>         (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>     (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court has interpreted the "failed to develop" clause of §

2254(e)(2) to mean

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . .

*Michael Williams v. Taylor*, 529 U.S. 420, 435 (2000).

As we have held, "[i]f the petitioner fails the diligence requirement of § 2254(e)(2), he is

channeled into the strict requirements of subparts (A) and (B)," which permit an evidentiary hearing

if the claim rests on a new rule of constitutional law or on a factual predicate "'that could not have been previously discovered through the exercise of due diligence.'" *Hutchison v. Bell*, 303 F.3d 720, 729 (6th Cir. 2002) (citation omitted).

In this case, the Kentucky Supreme Court relied upon the suppression hearing tape because Cornelison failed to submit a copy of the confession tape into the appellate record. The original confession tape was presented to the state trial court, and Cornelison cannot show that this tape "could not have been previously discovered" during his state court appellate proceedings or in the present *habeas* proceedings. Indeed, Cornelison's state court appellate counsel conceded that he relied upon the suppression hearing tape because he was not able to obtain a copy of the confession tape from Cornelison's relatives. Cornelison's lawyer did not explain why the confession tape was not obtained from the state trial court or, by motion, from the prosecution. *See Michael Williams*, 529 U.S. at 434–35 (holding that the "failed to develop" clause does not bar an evidentiary hearing where, for example, the prosecution concealed evidence). The transcript of the confession tape provided to the *habeas* court does not entitle Cornelison to an evidentiary hearing because that tape, or a transcript thereof, could have been, but was not, provided to the state supreme court and "[f]ederal courts sitting in *habeas* are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 437. Under the strict requirements of § 2254(e)(2), Cornelison "failed to develop" the factual basis he now asserts for his *Miranda* claim when he was before the Kentucky Supreme Court and, thus, he is not entitled to an evidentiary hearing in federal court.

Cornelison's attempt to surmount § 2254(e)(2) on the strength of *Stewart v. Erwin*, 503 F.3d 488, 500 (6th Cir. 2007), is unavailing. In *Erwin*, the *habeas* record contained none of the information relied upon by the state courts in sentencing the petitioner. 503 F.3d at 499–500. We remanded the matter to the district court and ordered the state to produce the record that was essential for *habeas* review. *Id.* at 501. We did so pursuant to 28 U.S.C. § 2254(f), which provides that if the petitioner, "because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official." *See id.* However, this case is distinguishable from *Erwin* because Cornelison did not provide the state supreme court with the confession tape although it had been played at the suppression hearing and, thus, presumably was available. Cornelison has not demonstrated that the tape was unavailable or that the prosecution somehow prevented him from presenting it. Moreover, in *Erwin*, the *habeas* record lacked the relevant parts of the state court record through no fault of the petitioner's. Here, Cornelison's counsel apparently possesses either the confession tape, of which a transcript was made for federal proceedings, or the suppression hearing tape. Thus, Cornelison has not shown that "because of indigency or other reason," he has been unable to produce the relevant tapes or their transcripts. 28 U.S.C. § 2254(f). Rather, he has chosen, at each stage of litigation, to submit incomplete and different evidence of the police interview that has failed to persuade state and federal courts to rule in his favor.

B.

Because Cornelison is not entitled to an evidentiary hearing to introduce the confession tape, we must determine whether the decision of Kentucky Supreme Court, on the record before it, was "contrary to" or involved an "unreasonable application" of clearly established federal law. *See* 28 U.S.C. § 2254(d).

The essence of Cornelison's claim is that the police continued to interrogate him in violation of federal law after he invoked his right to counsel. Under *Edwards v. Arizona*, once a custodial suspect invokes his right to counsel, the police may not further interrogate him until counsel has been made available unless the suspect initiates further communication. 451 U.S. at 484. Furthermore, in *Davis v. United States*, the Supreme Court held that the immediate cessation of interrogation is triggered by a clear and unambiguous request for counsel. 512 U.S. at 459. If a suspect makes an ambiguous or equivocal assertion of his right to counsel, questioning may continue. *Id.*; *see also Berghuis v. Thompkins*, 130 S. Ct. 2250, 2261 (2010) ("An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." (quoting *N. Carolina v. Butler*, 441 U.S. 369, 376 (1979))). Thus, a suspect must assert his right to counsel "with sufficient clarity that a reasonable officer would perceive it as such under the circumstances." *Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008) (citations omitted); *see also United States v. Hurst*, 228 F.3d 751, 759–60 (6th Cir. 2000) (applying *Davis* to the invocation of both the right to counsel and the right to remain silent). The inquiry is objective. *Franklin*, 545 F.3d at 414. Significantly, the suspect must "make some affirmative 'statement' or 'request' whose ordinary meaning shows his desire to deal with the police through counsel." *United States v. Suarez*, 263 F.3d 468, 483 (6th Cir. 2001)

(citations omitted); *see also Edwards*, 451 U.S. at 484 (indicating that the request must show the suspect's "desire to deal with the police only through counsel"). For example, we have held that a statement such as "maybe I should talk to an attorney by the name of William Evans" triggers the *Edwards* prohibition on further custodial interrogation. *Abela v. Martin*, 380 F.3d 915, 925–27 (6th Cir. 2004). However, "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois*, 469 U.S. 91, 100 (1984).

As the state supreme court found, Cornelison was read his *Miranda* rights and then he asked, "What if I want my lawyer present first?" The police told Cornelison that the decision was up to him, but the conversation continued with the detective explaining the waiver-of-rights form. Crucially, the state court found that Cornelison signed the waiver form *while* stating that he would like a request for a lawyer "on the record." The detective then sought to clarify whether Cornelison wanted his lawyer present, and Cornelison completed the form and laid down his pen. The detective asked whether Cornelison wanted to talk to the police, and Cornelison nodded his head affirmatively and responded, "Yes."[1]

Under these facts, the Kentucky Supreme Court reasonably concluded that, under *Davis*, Cornelison's alleged request for counsel was ambiguous and insufficient to require the police to stop the interrogation. Cornelison's reliance upon *Abela*, 380 F.3d at 925–27, is misplaced. In that case,

---

[1]Cornelison asserts that he unambiguously and unequivocally invoked his right to counsel when he stated, "I want my lawyers to be here to know what I'm talking about first off." However, this statement was not in the record on appeal.

the petitioner was interrogated by the police about a stabbing and he responded by stating, "maybe I should talk to an attorney by the name of William Evans," and by giving the police officer a business card. *Id.* at 919. The officer left the room, presumably to contact the lawyer. Upon returning, he made no mention of the attorney and proceeded to read the petitioner his *Miranda* rights. *Id*. The petitioner then signed a waiver and gave a statement confessing to the crime. *Id*. We held that a reasonable officer would have understood that the petitioner had clearly and unequivocally invoked his right to counsel because he had named a specific individual with whom he wanted to speak and then showed the officer the lawyer's business card. *Id*. at 926. In this case, by contrast, Cornelison merely asked the police about an attorney but then proceeded to fill out and sign the waiver form before indicating that he wished to speak with the police.

This sequence of events also undermines Cornelison's contention that his conversation with the police, after he requested counsel, should not render his request ambiguous and equivocal. *See Smith*, 469 U.S. at 97–98. In *Smith*, a suspect was asked whether he wanted a lawyer present during questioning and responded, "Uh, yeah. *I'd like to do that.*" *Id*. at 93 (emphasis in original). He was then asked again whether he wished to speak with the police and he did so after responding, "Yeah and no, uh, I don't know what's what, really." *Id*. The Supreme Court held that "[w]here nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease." *Id*. at 98. The Court emphasized that its decision was "narrow" and that it did not address "the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself, nor [did the Court] decide the consequences of such ambiguity

or equivocation." *Id*. at 99–100. Both the "events preceding the request" and the "nuances inherent in the request itself" show that Cornelison's request was ambiguous and equivocal. Cornelison asked, "What if I want my lawyer present first?" and then proceeded to sign the waiver form while stating he wanted a request for a lawyer "on the record." The police then clarified whether Cornelison wished to speak with them, and he responded, "Yes." The police did not attempt to "wear down [Cornelison] and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Id*. at 98 (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983)). The "circumstances leading up to the request" and the nature of the request rendered the request for counsel ambiguous and equivocal. *Id*. at 97.

Our review of the record presented to the Kentucky Supreme Court reveals that Cornelison failed to make a statement that a reasonable officer would have understood to be an unambiguous or unequivocal request for counsel. Thus, we conclude that the decision of the Kentucky Supreme Court was neither contrary to nor involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d).

III.

For the foregoing reasons, we affirm the district court's decision.[2]

---

[2]Because we affirm the district court's decision on the merits of Cornelison's *habeas* petition, we need not reach his argument that the court erred in holding that his claims failed because federal *habeas* review does not lie for errors of state law. *See Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (holding that we "may affirm on any grounds supported by the record even if different from the reasons of the district court") (citation and quotation marks omitted).