RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SEDRICK FRANKLIN,

        *Petitioner-Appellant,*

    *v.*

MARGARET BRADSHAW, Warden,

        *Respondent-Appellee.*

No. 07-3497

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00089—S. Arthur Spiegel, District Judge.

Argued: September 16, 2008

Decided and Filed: October 21, 2008

Before: GUY, RYAN, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Stephen P. Hardwick, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Gene D. Park, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Theresa G. Haire, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Gregory T. Hartke, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

    GUY, J., delivered the opinion of the court, in which McKEAGUE, J., joined. RYAN, J. (p. 6), delivered a separate opinion concurring in part.

_____

**OPINION**

_____

    RALPH B. GUY, JR., Circuit Judge. Petitioner Sedrick Franklin appeals from the district court's dismissal of his petition for writ of habeas corpus challenging his convictions for murder and felonious assault, with firearm specifications, in violation of Ohio Revised Code §§ 2903.02(B) and 2903.11(A)(2). A certificate of appealability was granted with respect to petitioner's second ground for relief, only: the claim that his post-arrest silence was used against him at trial, unfairly penalizing him for exercising his right to remain silent in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Doyle v. Ohio*, 426 U.S. 610 (1976). Finding that the district court correctly concluded that the state court's rejection of this claim was not an unreasonable application of Supreme Court precedent, we affirm the dismissal of petitioner's application for habeas relief.

1

**I.**

**A.      Procedural Facts**

Petitioner Sedrick Franklin was charged in a four-count indictment with murder, felonious assault, cocaine trafficking, and possession of cocaine. Franklin pleaded guilty to the trafficking charge pertaining to an earlier date, and the possession charge merged into that conviction. After a jury trial, Franklin was found guilty on the remaining counts. He was sentenced in March 2001 to concurrent terms of 15 years to life on the murder conviction, 7 years for the felonious assault conviction, and 17 months on the cocaine trafficking conviction.

The Ohio Court of Appeals affirmed on the merits, and the Ohio Supreme Court dismissed his appeal "as not involving any substantial constitutional question." While the direct appeal was pending, Franklin filed a petition for post-conviction relief asserting that his counsel labored under a conflict of interest, which was denied by the trial court in June 2002. That decision was affirmed by the Ohio Court of Appeals in April 2003, and the Ohio Supreme Court denied leave to appeal in September 2003.

On February 6, 2004, Franklin filed his petition for writ of habeas corpus asserting two grounds for relief. A magistrate judge recommended that the petition be denied. Over petitioner's timely objections, the district court adopted the report and recommendation, dismissed Franklin's habeas petition, and granted a certificate of appealabilty with respect to his second ground for relief. Judgment was entered accordingly. Petitioner appealed to this court, and his request to expand the certificate of appealability to include his other claim for relief was denied.[1]

**B.      Factual Background**

On July 5, 2000, Darrell Wyatt and passenger Bruce Hennig drove to the home of Toni Bundy to purchase crack cocaine. Wyatt had purchased crack from Bundy earlier that day, and was returning for more. As Wyatt approached, Bundy came out of the house with Franklin. Franklin offered Wyatt a "better deal," and Wyatt gave Franklin $40 for some crack. Wyatt took the crack to Hennig, who was waiting in the car, and Hennig realized that they had been given counterfeit cocaine commonly referred to as "fleece."

Wyatt wanted his money back and called out to Franklin, who was standing by a truck in which several other people were seated. As Wyatt approached Franklin, he saw Franklin reach behind his back for something. Wyatt decided to "cut his losses," ran back to his car, and turned around to see Franklin pointing a gun at him. Wyatt got in the car and heard three gunshots and the shattering of glass as he drove away. One bullet entered the headrest on the passenger side, and another struck Hennig in the head and killed him. Wyatt drove to a nearby store where he called 911 to report the shooting.

Franklin, who was 16 years of age at the time, was located and questioned. After being warned of his rights and signing an advice of rights card, Franklin denied that he was in the area and offered an alibi to account for his whereabouts. A written statement taken at that time was admitted at trial. As the investigation unfolded, several witnesses told police that Franklin was the shooter. Also, Bundy identified Franklin from a photographic lineup as the person who sold the "fleece" to Wyatt and fired the gunshots as Wyatt drove away. Bundy said she observed Franklin pull out a

---

[1]This appeal was filed on April 13, 2007, after the district court granted Franklin's motion to extend the time for filing his notice of appeal.

gun, hold it sideways, and point it at Wyatt. Bundy testified that she saw the muzzle flash, that she heard three shots, and that Franklin was the only person who had a gun that evening.[2]

On July 7, 2000, the police questioned Franklin again. The Ohio Court of Appeals succinctly summarized the seven-minute interview as follows:

> The videotaped interrogation begins at 12:32 p.m. [Franklin] is informed of the charges lodged against him. [Franklin] is then asked if he remembers his rights as they were explained to him when the officers questioned [Franklin] the day before when he signed a *Miranda* card. Appellant is again advised that he has the right to remain silent, to end the questioning at any time, and to have counsel present. [Franklin] never invokes any of his rights. At 12:34 p.m., the officers ask [Franklin], "do you understand your rights," and he answers "yes, sir." The officers ask [Franklin], do you want to tell us your side of the story." [Franklin] answers "no." [Franklin] never states during the questioning that he wishes to remain silent, however he does put his head down and avoid eye contact with the officers. The officers inform [Franklin] that they know he was at the scene because a number of witnesses place him there. [Franklin] denies being at the scene and states "how you goin' to tell me where I was, I know where I was." The officers ask [Franklin] "did you fire any shots?" [Franklin] answers, "I didn't kill nobody." The officers ask [Franklin] "was it your gun?" [Franklin] answers, "I never had no gun," and states "I'm not lying to you." The officers ask [Franklin] "is that your response, i[s] that what you're going with," and [Franklin] responds, "I ain't did nothing."

Defense counsel unsuccessfully moved to suppress the videotape statement before trial. Franklin did not testify at trial, and the statement was admitted over defense counsel's objection.

The Ohio courts found, *inter alia*, that Franklin's statement was voluntary, that Franklin did not invoke his right to remain silent or his right to counsel under *Miranda*, and that the statement was not admitted for purposes of impeachment in contravention of *Doyle*. Without contesting the finding with respect to the voluntariness of the statement, Franklin argued in his habeas petition that the videotape statement was wrongfully admitted in violation of his rights under *Miranda* and *Doyle*.

## II.

### A.      Standard of Review

In an appeal from a decision to grant or deny a petition for writ of habeas corpus, we review the district court's legal conclusions *de novo* and the factual findings underlying its analysis for clear error. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). This case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides that a habeas petition shall not be granted with respect to any claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).[3]

---

[2]At trial, a forensic investigator testified that the three Smith and Wesson .40 caliber casings found at the scene—two on the street and one in the pickup truck—were all fired from the same gun.

[3]The state court's factual findings are presumed to be correct unless clear and convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1).

Under the "unreasonable application" clause, which is the basis of Franklin's claim on appeal, the federal courts may grant the writ if the state court identified the correct governing standards from the Supreme Court's decisions but unreasonably applied them to the facts of the petitioner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). To establish this, the state court decision must be objectively unreasonable—not just incorrect or erroneous. *Id*. at 409.

**B.     *Miranda* and *Doyle***

The Court in *Miranda* held "that certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted in evidence." *Dickerson v. United States*, 530 U.S. 428, 431-32 (2000). The warnings, commonly referred to as *Miranda* rights, address both the right to remain silent and the right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). A waiver of these rights may be express or implied. *North Carolina v. Butler*, 441 U.S. 369, 373, 375-76 (1979) (holding that express waiver of *Miranda* rights is not required and that "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated"). Waiver may be inferred when a defendant—after being properly informed of his *Miranda* rights and indicating that he understands them—does nothing to invoke those rights.

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.

*Miranda*, 384 U.S. at 473-74.

The critical question for us, given the applicable standard of review, is whether it was objectively unreasonable for the state court to conclude that Franklin did not invoke his right to remain silent during the videotaped interview. "[N]o ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination." *Emspak v. United States*, 349 U.S. 190, 194 (1955). The Supreme Court has also held, however, that a suspect must unambiguously invoke his right to counsel. *Davis v. United States*, 512 U.S. 452, 457 (1994). If a suspect makes an ambiguous or equivocal assertion of the right, questioning need not cease. *Id*. at 459. In order to avoid difficulties of proof and provide guidance to officers conducting interrogations, this inquiry is an objective one. *Id*. at 457. This court has interpreted *Davis* to apply equally to the invocation of the right to counsel and the right to remain silent. *United States v. Hurst*, 228 F.3d 751, 759-60 (6th Cir. 2000); *McGraw v. Holland*, 257 F.3d 513, 516 (6th Cir. 2001). Thus, a suspect must assert his right to remain silent with sufficient clarity that a reasonable officer would perceive it as such under the circumstances. *Hurst*, 228 F.3d at 759; *see also McGraw*, 257 F.3d at 519.

Franklin does not rely on *McGraw*, even though the habeas petitioner in that case succeeded in establishing that it was objectively unreasonable for the state court to find that she had not invoked her right to remain silent. Examination of the facts reveals that this case is not like *McGraw*. There, Tina McGraw, 16 years of age at the time, was interviewed about assisting in the perpetration of a gang rape. McGraw was reluctant, asked to talk about it later, and repeatedly stated that she did not want to talk about the rape. Refusing to take "no" for an answer, the detective continued the interrogation until McGraw confessed that she had held one of the victim's arms. This court found that there was nothing ambiguous about her repeated insistence that she did not want to talk about the rape, and that the state court's determination that she had not invoked her right to remain silent was an objectively unreasonable application of *Miranda*. 257 F.3d at 519-20.

Similarly, in *Abela*, a right-to-counsel case, this court found that it was an objectively unreasonable application of Supreme Court precedent to conclude that the petitioner's statement was an ambiguous invocation of the right to counsel in light of the immediately surrounding

circumstances. Specifically, after being advised of his *Miranda* rights, Abela stated "maybe I should talk to an attorney by the name of William Evans" and then showed the officers the attorney's business card. Indeed, an officer responded that he would call Abela's attorney and left the room. *Abela v. Martin*, 380 F.3d 915, 926 (6th Cir. 2004).

In this case, Franklin was advised of his *Miranda* rights, acknowledged that he understood them, and answered "no" when asked if he wanted to "tell his side of the story." Franklin made no other statements that could arguably have clarified that he was invoking his right to remain silent. Keeping in mind our standard of review, we find that it was not an unreasonable application of *Miranda* and *Davis* for the state court to conclude that Franklin had not unambiguously or unequivocally asserted his right to remain silent by this statement. Nor does the fact that Franklin kept his head down except when asked to look up or when answering the officers questions, alter our conclusion that the state court's determination on this issue did not involve an unreasonable application of federal law.

In *Doyle*, the Supreme Court held that, because the *Miranda* warnings contain an implicit assurance that "silence will carry no penalty," it would be fundamentally unfair to allow a prosecutor to use a defendant's post-*Miranda* warnings silence to impeach the explanation he offered at trial. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *see also Wainwright v. Greenfield*, 474 U.S. 284, (1986) (holding that prosecutor's use of post-*Miranda* silence as evidence of sanity violated due process). However, a line of questioning that delves into prior inconsistent statements does not implicate *Doyle* because such questioning makes no unfair use of post-*Miranda* silence. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). That is, "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Id*. Likewise, the testimony regarding Franklin's statements did not implicate *Doyle*, since the prosecutor did not make use of post-*Miranda* silence. The state court's rejection of this claim did not involve an unreasonable application of *Doyle* and *Anderson*.

## C.     Harmless Error

Even if we were to find that Franklin had invoked his right to remain silent such that admission of the evidence violated *Miranda* or penalized him for his silence contrary to *Doyle*, such error would be subject to harmless error review. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Harmless error review requires the court to assess whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, __ U.S.__, 127 S. Ct. 2321, 2325 (2007), *reh'g denied*, 128 S. Ct. 19 (2007). If we are in "grave doubt" whether the error had such an effect, "that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "Grave doubt" means "that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id*. at 435.

In this case, although Franklin's statements were not directly inculpatory, they were admitted to "demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication." *Miranda*, 384 U.S. at 477. Nonetheless, the videotaped statements were cumulative of his prior written statements to police in which he denied being present and offered an alibi for his whereabouts. The admission of his earlier statements greatly lessened the impact of the challenged statements in which he again denied any involvement. Given that there was strong evidence identifying Franklin as the one who fired the shots at Wyatt's vehicle, we find that any error in the admission of the evidence would not have had a substantial and injurious effect on the jury's verdict.

**AFFIRMED.**

---

**CONCURRING IN PART**

---

RYAN, Circuit Judge, concurring in part.  I concur in the conclusion that the district court did not err in denying the petitioner *habeas* relief, but only for the reason stated in Part II.C. of my brother's opinion, the harmless error analysis.