**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0963n.06

No. 10-2573

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 31, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| T.J. TREMBLE, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| SHERRY BURT, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Before:  CLAY and GIBBONS, Circuit Judges; KORMAN, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Petitioner-appellee T.J. Tremble was convicted

of two counts of first-degree felony murder in the state of Michigan.  He filed a *pro se* petition for

federal *habeas* relief in which he claimed that his confession to the murders was improperly admitted

at trial, that the trial court erred in refusing to change venue, that the prosecution withheld key

documents, and that he was denied the effective assistance of trial and appellate counsel.  The district

court conditionally granted a writ of *habeas corpus* on each of Tremble's claims except for the

improper venue claim.  For the reasons that follow, we reverse the judgment of the district court and

deny Tremble's petition for *habeas* relief.

---

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of
New York, sitting by designation.

I.

A.

In his *habeas* petition, Tremble maintains that his confession, in which he admitted to killing Peter and Ruth Stanley, was improperly admitted at trial. Prior to trial, a *Walker*[1] hearing was held on Tremble's motion to suppress this statement, where the following facts were introduced.

Deputy Sheriff Shon Chmielewski arrested Tremble around 2:00 a.m. on April 19, 1997, after Chmielewski found Tremble standing next to a vehicle located in a ditch on the side of the road. Tremble, who was fourteen years old at the time, admitted that he had stolen the vehicle and that he had been drinking. Chmielewski transported Tremble to the local sheriff's department and jail, where a Breathalyzer blood alcohol test was administered. Before administering the test, Chmielewski read Tremble his *Miranda* rights. Tremble indicated that he was willing to speak with the deputy and answered Chmielewski's questions about the stolen car. At the time, Chmielewski was unaware that the Stanleys, who were the owners of the stolen car, had been killed, and he did not ask Tremble any questions on that subject. The Breathalyzer test was administered at 3:13 a.m., and it indicated that Tremble had a blood alcohol level of .05.

While he was receiving the test results from the Breathalyzer, another officer told Chmielewski that the Stanleys had been killed. Chmielewski then called Sheriff James Mosciski, who arrived at the sheriff's department a short while later. Mosciski found Tremble in the booking room around 3:45 a.m. and asked him to repeat what he had said to Deputy Chmielewski about the

---

[1]*People v. Walker*, 132 N.W.2d 87 (Mich. 1965).

stolen car. Tremble did so. When Mosciski asked Tremble if he had anything further to say, Tremble replied "no." Mosciski then indicated that he would be in his office if Tremble wanted to speak with him, but around twenty to thirty minutes later—without any prompting from Tremble—Mosciski returned to the booking room and again asked Tremble generally if he had anything that he wanted to say. Tremble again replied "no."

Mosciski called Tremble's parents around 5:30 a.m., and they arrived at the sheriff's department around 7:30 in the morning. Officers advised the parents of their own *Miranda* rights, informed them that Tremble had been found with the Stanleys' stolen car and that the Stanleys had been found deceased in their residence, and told them that they would be able to see their son after the officers questioned him. Although he did not remember making this statement, several witnesses testified that Tremble's father, James Tremble, told the officers to tell his son that he should "come clean." Tremble's parents also testified that they requested "counsel" for their son and that this request was denied.

Around 8:30 a.m., Tremble was escorted to the sheriff's office, where Sheriff Mosciski read Tremble his *Miranda* rights again, concluding with the question, "having these rights in mind, do you wish to talk with me now?" Tremble answered "yes," he was willing to speak and signed the *Miranda* card. Mosciski then relayed the message from Tremble's parents, stating that they wanted him to come clean. Four officers proceeded to question Tremble. During this interrogation, Tremble confessed to killing Peter and Ruth Stanley, stating that he shot them with a .22 rifle while in their bedroom. Chmielewski testified that Tremble was awake and alert during this questioning, and was not slurring his speech. Mosciski likewise testified that during this questioning Tremble was alert,

that his speech was not slurred, and that he understood and was able to provide detailed answers to the questions asked. There is no indication in the *Walker* hearing transcript that Tremble requested an attorney at any point prior to his confession.

Further testimony established that Tremble had been sitting in a padded chair with his hands handcuffed behind his back for approximately four to five hours before he was questioned in the sheriff's office. While this was unusual, Lieutenant Patricia Skarbek testified that Tremble was handcuffed in this position because there was a belief that he could have evidence on his hands and the officers wanted to prevent him from wiping or washing his hands before the forensic lab arrived. Tremble did complain that his handcuffs were too tight when Mosciski first spoke to him in the booking room—Mosciski subsequently loosened them—but the record does not show that Tremble otherwise indicated that he was uncomfortable in this position. Tremble also refused breakfast when it was offered to him around 7:30 a.m.

## B.

The trial court denied Tremble's motion to suppress his confession, and at the conclusion of his trial, a jury convicted Tremble on two counts of first-degree felony murder, one count of possession of a firearm during the commission of a felony, and one count of unlawfully driving away an automobile. Tremble was sentenced to life imprisonment without the possibility of parole for the first-degree murder convictions. *People v. Tremble*, No. 208854, 2000 WL 33534678 (Mich. Ct. App. Feb. 1, 2000) (*per curiam*).

Tremble filed a direct appeal to the Michigan Court of Appeals, which affirmed his convictions on February 1, 2000. *Id.* On appeal, Tremble argued, *inter alia*, that the trial court erred

in denying his motion to suppress his confession because it was not voluntary. *Id*. at *1. Concluding

that the trial court did not err in determining that the confession was voluntary, the appellate court

considered the totality of the circumstances and found:

> Here, defendant was given the *Miranda* warnings twice prior to his confession. He indicated that he understood his rights and he waived those rights. After reading defendant his *Miranda* rights, Sheriff Mosciski asked defendant if he wanted to "talk now" and defendant said "[y]es." As indicated above, because defendant was charged as an adult, the police were not required to comply with the requirements of MCL 764.27; MSA 28.886. Although neither defendant's parents nor an attorney were present during the questioning, defendant, after being advised of his rights, did not request the presence of his parents or an attorney. While defendant was only fourteen-and-a-half years old and only had an eighth grade education, there is nothing in the record to indicate that he could not read and write or could not understand the serious nature of the charges against him. In fact, a juvenile corrections officer explained to defendant, prior to his confession, that the charges against him were very serious. Moreover, there is nothing in the record to indicate that defendant was intellectually challenged.

> Defendant was not detained for a lengthy period of time before he made his statement. He was brought into the jail at approximately 3:00 a.m. Defendant went through the booking procedure and submitted to a breathalyzer test. Evidence technicians from the State Police Post collected evidence from defendant at approximately 6:45 a.m. Defendant's parents appeared at the jail at 7:30 a.m. and consented to allow the police to talk to defendant. Defendant gave his statement at 8:30 a.m. We do not believe that defendant's five-and-a-half hour detention prior to his confession was unreasonable under the circumstances.

> Furthermore, defendant does not claim, and there is no indication in the record, that he was subjected to repeated or prolonged questioning in this case. There is no indication that defendant was injured or sick when he confessed to killing the victims in this case. Additionally, although defendant had two alcoholic beverages approximately eight hours prior to the confession and a blood alcohol level of .05 at 3:15 a.m., there is no indication that he was intoxicated at 8:30 a.m. when he confessed to the murders. Moreover, although defendant had not slept or eaten for at least nine hours prior to the questioning, there was no evidence that he was not alert at the time of questioning. In fact, Sheriff Mosciski testified that defendant appeared to be alert and awake during questioning. Defendant, who had eaten a sandwich at 11:30 p.m. the previous day, declined the breakfast that was offered . .

> . at 7:30 a.m. at the jail. Therefore, he was not deprived of food prior to the confession. Although defendant was handcuffed for a number of hours, those handcuffs were loosened upon defendant's request. There is nothing in the record to indicate that defendant was mistreated in any way by the police.

*Id*. at *2–3. The Michigan Supreme Court denied leave to appeal on December 4, 2001. *People v. Tremble*, No. 116377, 638 N.W.2d 749 (Mich. 2001) (table).

Tremble then filed a *pro se* motion for relief from judgment in the Arenac County Circuit Court. He claimed that (1) the prosecutor withheld key documents in violation of discovery rules, (2) the trial court erred in admitting his confession and evidence obtained as a result of an illegal search, (3) he was denied effective assistance of trial counsel when counsel failed to seek suppression of his statement on the proper grounds, failed to suppress the fruits of an illegal search, and conceded defendant's guilt during closing argument, and (4) he was denied the effective assistance of appellate counsel. Tremble attached a document titled "Warning" (hereinafter "Warning Form") to his brief in support of his post-conviction motion. Following a notice of his *Miranda* rights, the Warning Form indicates that Tremble requested an attorney. The form also contains an illegible signature of the "Officer" who read the notice and Tremble's signature, acknowledging that he received a copy of the form and that it was read to him. The Warning Form is dated April 19, 1997, and is marked with a time of "4:05." The form does not indicate whether this time was 4:05 a.m. (prior to Tremble's confession) or 4:05 p.m. (after Tremble's confession). Finally, the Warning Form is stamped with the date it was filed with the state trial court, July 28, 1997.

Tremble implied in his *pro se* brief that he signed the Warning Form requesting an attorney before his confession made around 8:30 a.m.[2] The trial court denied Tremble's motion for relief from judgment on December 18, 2003, and his subsequent appeals were denied by the Michigan Court of Appeals and the Michigan Supreme Court.

C.

Tremble filed his *pro se* petition for federal *habeas* relief on September 7, 2006, alleging that (1) his confession was improperly admitted, (2) the trial court erred in refusing to change venue, (3) he was denied due process and a fair trial when the prosecutor withheld the Warning Form, (4) he was denied the effective assistance of trial counsel when defense counsel failed to seek the suppression of his confession on the basis that it was taken in violation of his Fifth, Sixth, and Fourteenth Amendment rights, and (5) he was denied effective assistance of appellate counsel on his direct appeal. Tremble attached a copy of the Warning Form to his habeas petition as well. In its response, the State asserted that Tremble was procedurally barred from raising any arguments related to the Warning Form because they were not raised on direct appeal. The State did not directly challenge the factual accuracy of Tremble's allegation that the form was signed at 4:05 a.m., but it did suggest that it would have been "pointless" for appellate counsel to argue that the confession should have been suppressed. The State, however, did not include any additional evidence establishing when the form was signed in its response.

---

[2]Tremble does not explicitly state when he signed the Warning Form in his brief, but the clear implication from his arguments is that he claimed to have signed the form at 4:05 *a.m.*

On September 28, 2009, the district court mistakenly entered an opinion and order denying relief as to all of Tremble's *habeas* claims. The opinion was "an internal draft that the Court was still working on" that was entered through an inadvertent error, and the court vacated this order after the error was brought to its attention.

On September 1, 2010, the district court conditionally granted the writ of *habeas corpus*. The district court first held that Tremble's confession was improperly admitted. It found that Tremble had twice invoked his right to remain silent and cut off questioning and that the state appellate court made an unreasonable factual determination by "ignoring the Sheriff's unlawful conduct in persisting in questioning" Tremble after he had invoked this right. It also found that the confession was involuntary under *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981), after concluding that Tremble had signed the Warning Form, "clearly indicat[ing] that he desired the assistance of counsel," prior to his confession. The district court further found that the confession was involuntary under the totality of the circumstances and that the state appellate court's ruling to the contrary was unreasonable. The district court also granted relief based upon its ruling that the prosecution committed misconduct by not disclosing the Warning Form earlier in the trial proceedings and by not preventing or correcting police testimony at the *Walker* hearing that Tremble never asked for counsel. Finally, the district court held that trial and appellate counsel were ineffective for failing to present the Warning Form when seeking the suppression of Tremble's statement and granted relief on this basis as well.

The State filed a motion for reconsideration of this decision on September 14, 2010. It argued that the district court had mistakenly concluded that the Warning Form had been signed at

4:05 a.m. and that the document had actually been furnished to Tremble at his arraignment in the afternoon of April 19, 1997, *after* he had confessed to the murders. In support of this argument, the State attached a copy of the transcript from Tremble's arraignment in which the magistrate read Tremble his rights as they appeared on the Warning Form and discussed the signing of a form. During this exchange, Tremble first said "no" when asked by the magistrate "[d]o you want an attorney?" But due to the serious nature of the charges against him, the magistrate decided to appoint an attorney for Tremble despite this refusal. The State also attached an affidavit from Kelly Meschke of the Arenac County Clerk's Office, who attested that the form in question was routinely used in the state's 81st District Court during felony arraignments and that she witnessed Tremble's receipt of the Warning Form at his arraignment and his signing of the document.

The district court denied the motion for reconsideration on November 17, 2010, holding that the State's argument regarding the Warning Form was barred because it had failed to challenge Tremble's factual allegations concerning when the form was signed before the court ruled on the *habeas* petition. The district court further ruled that even if it accepted the State's argument and disregarded the Warning Form, Tremble's confession was still inadmissible under a totality of the circumstances analysis. The State now appeals the district court's rulings conditionally granting Tremble's *habeas* petition.

## II.

We review a district court's grant of a *habeas* petition brought pursuant to 28 U.S.C. § 2254 *de novo*, but the district court's factual findings are reviewed for clear error. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (*en banc*). Because Tremble filed his *habeas* petition on

September 7, 2006, the substantive and procedural standards set forth in AEDPA, which became effective on April 24, 1996, govern our review. *See Williams v. Bagley*, 380 F.3d 932, 941 (6th Cir. 2004). Under AEDPA, federal *habeas* review of state court proceedings is limited. *See, e.g.*, *Lowe v. Swanson*, 663 F.3d 258, 260–61 (6th Cir. 2011). If a state court has adjudicated a claim on the merits, an application for a writ of *habeas corpus* shall not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)–(2).

Under the "contrary to" clause, a state-court decision is contrary to the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if the "state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a different result from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause we may "grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Pursuant to the limitations imposed by AEDPA, we may grant a petitioner relief under the "unreasonable application" clause only if the state court's application of federal law is "objectively unreasonable." *Id.* at 409. Our grant of *habeas* relief is

precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The standards set forth in § 2254(d)(1) are "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (quoting *Richter*, 131 S. Ct. at 786).

The *habeas* petitioner bears the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1). Under § 2254(d)(2), we will not overturn "a decision adjudicated on the merits in a state court and based on a factual determination" unless it is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### III.

Tremble argues in his petition that his confession was improperly admitted at trial. *Miranda v. Arizona* established that an accused individual has both a right to counsel during a custodial interrogation and the right to remain silent and that an accused must be advised of those rights prior to custodial interrogation. 384 U.S. 436 (1966). A waiver of the rights to remain silent and to counsel may be express or implied. *See Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008) (citing *North Carolina v. Butler*, 441 U.S. 369, 375–76 (1979)). However, the waiver must be "made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. The waiver inquiry proceeds as follows:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986). There is no formalistic waiver procedure applicable to the waiver of *Miranda* rights, instead "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2262 (2010). Thus, "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.*

It is not disputed that when he was questioned in the sheriff's office immediately prior to giving his confession, Tremble was advised of his *Miranda* rights and he did not invoke his right to remain silent or his right to counsel at that time. The question is whether Tremble waived these rights knowingly and voluntarily. After considering the totality of the circumstances, the state court of appeals concluded that Tremble had understood his rights and waived them voluntarily. This ruling was not an objectively unreasonable application of federal law nor was it based on an objectively unreasonable factual determination in light of the evidence presented.

First, Tremble relies on the Warning Form, indicating that he requested counsel, to argue that he had invoked his right to counsel before he made his statement confessing to the murders. Although the right to counsel may be waived, *see Butler*, 441 U.S. at 372–76, an individual who has

invoked his right to have counsel present during a custodial interrogation does not waive his right to counsel by simply responding "to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). Once an individual unambiguously requests counsel, the police must cease questioning. *Davis v. United States*, 512 U.S. 452, 459 (1994). If an individual has invoked his right to have counsel present during an interrogation, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85.

If we could consider the Warning Form and credit his allegation that he signed the Warning Form at 4:05 a.m., Tremble could indeed establish that he unambiguously requested counsel prior to the police questioning that led to his confession and that his right under *Edwards* to be free from such questioning until he was provided counsel had been violated. Under *Cullen v. Pinholster*, however, the scope of our review as a federal court sitting in *habeas* is limited to the record before the state court. 131 S. Ct. 1388, 1399 (2011). The Warning Form was not introduced into evidence during the *Walker* hearing or during trial. It was not part of the appellate record when the Michigan Court of Appeals considered Tremble's direct appeal. Accordingly, we may not consider the Warning Form when deciding the question here—whether the state appellate court's determination that Tremble did not request an attorney was "objectively unreasonable in light of the evidence presented in the state-court proceeding." *McKinney*, 649 F.3d at 488 (quoting *Miller-El*, 537 U.S. at 340). Because the state court record contains no evidence that Tremble requested counsel at any

point prior to his confession, this finding was not objectively unreasonable, and Tremble is unable to establish an *Edwards* violation.[3]

Tremble also argues that he twice invoked his right to remain silent prior to the questioning in the sheriff's office. He bases this argument on the fact that when Sheriff Mosciski spoke with Tremble in the booking room around 3:45 a.m. and again around twenty minutes later, each conversation was concluded by Mosciski asking if Tremble had anything further to say. Each time Tremble replied "no." The state appellate court did not address these incidents in its opinion.

After receiving a *Miranda* warning, "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473–74. An individual, however, must invoke his right to remain silent unambiguously. *Thompkins*, 130 S. Ct. at 2260 (holding that individual who did not say that "he wanted to remain silent or that he did not want to talk with the police," failed to invoke his right to cut off police questioning). Tremble was speaking to Mosciski immediately before Mosciski asked him if he had anything further to say—first, describing how he stole the Stanleys' car and second, complaining that his handcuffs were too tight. His response to Mosciski's general inquiries was not necessarily an unambiguous assertion of his constitutional right to remain silent and cut off further

---

[3]The fact that Tremble's parents requested counsel for their son is not relevant under *Moran*, which stated that it is an "elemental and established proposition that the privilege against compulsory self-incrimination is . . . a personal one that can only be invoked by the individual whose testimony is being compelled." 475 U.S. at 433 n.4. The Court further held that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him"—such as Tremble's parents' request for counsel—"surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422.

questioning; rather, in context, it could simply have meant that, at that moment, he had nothing further to say. Although a court could reasonably find that Tremble had invoked his right to remain silent based on these exchanges, the state appellate court did not act in an objectively unreasonable manner when it failed to make such a finding.

Moreover, even if Tremble had invoked his right to remain silent, the admissibility of statements obtained after an individual has invoked his right to remain silent depends on whether the police "scrupulously honored" the "right to cut off questioning." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). Thus, as long as the police "scrupulously honor" the invocation of the right, there is no permanent bar to the resumption of questioning after the invocation of the right to silence, and a suspect may be approached again later to seek a waiver. *See id.* at 104–05.

In *Mosley*, investigators scrupulously honored a suspect's right to cut off questioning when, around two hours after the suspect first invoked his right to remain silent, a different police officer re-administered the *Miranda* warnings and questioned the suspect about a separate crime. *Id.* Here, around four-and-a-half hours following his purported invocations of his right to silence, Tremble was re-read his *Miranda* rights and was specifically questioned—albeit by the same officer with whom he had cut off questioning earlier—about the murder of the Stanleys for the first time. Although not identical, the circumstances of this case are similar enough to those in *Mosley* for a court to reasonably conclude that this was not a case of the police "persisting in repeated efforts to wear down [a suspect's] resistance and make him change his mind" about remaining silent. *Id.* at 105–06. The state appellate court did not act unreasonably when it failed to address this incident in its opinion, as the later questioning did not render Tremble's confession inadmissable.

15

Finally, the remaining circumstances surrounding Tremble's arrest, detention, and confession are susceptible to a number of different, reasonable characterizations and consequent weighing in a totality of the circumstances analysis. The record contains facts that point towards a finding that Tremble's waiver of his *Miranda* rights was knowing and voluntary and facts that point towards the opposite conclusion. For example, Tremble drank two alcoholic beverages earlier that night and had a blood alcohol level of .05 at 3:13 a.m., but Tremble made his statement confessing to the murders over five hours later at 8:30 a.m. When he was questioned, witnesses described him as alert and able to understand the questions posed to him. Further, Tremble was only fourteen years old when he made his statement, but he had had some prior experience with law enforcement because he had a prior juvenile offense, and—as the state court of appeals noted—there is nothing in the record to indicate that he was intellectually challenged, that he could not read and write, or that he could not understand the serious nature of the charges against him. Also, in response to their requests to see their son, Tremble's parents were told that they would have to wait until after he was questioned. Tremble, however, never asked to speak with his parents, and his father asked the police to pass along the message that he should "come clean."

Tremble was also handcuffed with his arms behind his back for several hours prior to his confession. The district court speculated that this likely was uncomfortable and could have contributed to a more coercive atmosphere. But the record also indicates that Tremble was seated in a padded chair and that he did not complain of any discomfort—except for one occasion when he said his handcuffs were too tight, and they were subsequently loosened. Tremble had not eaten anything since the prior evening, but he also refused the breakfast that was offered. Similarly,

16

Tremble had not slept that night, but according to the witnesses at the *Walker* hearing, he did not appear tired or ever request to sleep.

The answer to the question of whether Tremble knowingly and voluntarily waived his *Miranda* rights ultimately depends on which set of competing facts a court chooses to give greater weight. Although the district court apparently would have emphasized different aspects of the record and found that the confession was not voluntary, the state appellate court, in finding the opposite, did not reach an objectively unreasonable conclusion. *See Wood v. Allen*, 130 S. Ct. 841, 849 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams*, 529 U.S. at 411 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). In other words, the result reached by the state appellate court—finding that Tremble understood and voluntarily waived his rights—was within the spectrum of reasonable alternatives among which "fairminded jurists could disagree." *See Richter*, 131 S. Ct. at 786. Accordingly, under our deferential standard of review, Tremble is not entitled to *habeas* relief on his claim that his confession was improperly admitted.[4]

---

[4]Because we hold that the state courts committed no constitutional error in admitting Tremble's statement, we need not conduct a harmless error analysis. Nevertheless, we observe that the evidence of the defendant's guilt, independent of the confession, is substantial and compelling.

IV.

The remaining grounds on which Tremble was granted *habeas* relief—his prosecutorial misconduct claim and his ineffective assistance of trial and appellate counsel claims—depend upon his allegation that the Warning Form, on which he clearly requests an attorney, was signed prior to his confession made around 8:30 a.m.

Initially, we note that no evidence in the state court record supports a finding as to whether the Warning Form was signed at 4:05 a.m. or 4:05 p.m. or as to the circumstances of the signing. The form itself is facially ambiguous. It is dated April 19, 1997, and simply marked with a time of "4:05." The form does not indicate whether this time was prior to Tremble's confession at 4:05 a.m. or after Tremble's confession at 4:05 p.m. Although Tremble asserts that the Warning Form was signed at 4:05 a.m., this is simply an allegation made in his *pro se* briefing in support of his motion for reconsideration before the state courts and made again in his *pro se* petition for *habeas* relief.[5] Tremble's allegation cannot be afforded evidentiary status, and the district court erred in treating the allegation as true.[6]

---

[5]Since securing representation by counsel, Tremble has not submitted any sworn affidavits or any other evidence to support his allegations that the form was signed prior to his confession.

[6]The only evidence about the signing of the Warning Form is included in the district court record and was belatedly submitted by the State in support of its motion for reconsideration. This evidence strongly suggests that Tremble signed the Warning Form at 4:05 p.m. at his afternoon arraignment. We do not fault the district court for refusing to consider this evidence. It was in fact belatedly submitted. But its submission does highlight the problematic reasoning used by the district court in treating Tremble's allegation as true and drawing an unsupported inference from the face of the document about the time of signing. We note also that the State's negligence in the district court is somewhat mitigated by the context. The district court was not conducting an evidentiary hearing, so presentation of proof about the time of signing was not appropriate. And the State had

Moreover, Tremble cannot establish that he is entitled to *habeas* relief on his remaining claims. First, Tremble claims that the prosecution improperly withheld the Warning Form in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. Tremble cannot establish a true *Brady* violation, however, because he cannot establish that the prosecution withheld the Warning Form. *See Strickler v. Green*, 527 U.S. 263, 281–82 (1999) (holding that one of the necessary components of a *Brady* violation is the State's suppression of the evidence at issue). The stamp on the Warning Form indicates that it was filed with the Arenac County court on July 28, 1997, which was over a month-and-a-half before the *Walker* hearing—held on September 18, 1997—on Tremble's motion to suppress his statement. There was no *Brady* violation because the State did not withhold the document.

The district court, however, found that Tremble had raised a broader prosecutorial misconduct claim under *Berger v. United States*, 295 U.S. 78, 88 (1935) (stating that prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction"); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[A] State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction."). Relying on Tremble's allegations regarding the Warning Form, the district court concluded that the prosecutor misrepresented the facts

---

no notice that the court would in effect make a factual finding based on an allegation. But the State was hardly diligent in allowing Tremble's allegation to go unchallenged. This choice created a situation in which the district court's error more easily occurred.

when it permitted police officers to testify at the *Walker* hearing and argued in its brief that Tremble never requested counsel prior to his statement to the police. As discussed above however, the Warning Form itself is facially ambiguous, and Tremble's assertion that he signed the form prior to his confession has no evidentiary value and cannot be taken as true. When his allegations regarding the Warning Form are properly disregarded, Tremble cannot show that the prosecution misrepresented any facts or solicited false testimony. The prosecution did not commit misconduct by taking a position that was not inconsistent with this ambiguous document. Therefore, Tremble is not entitled to *habeas* relief on this broader prosecutorial misconduct claim either.

Finally, Tremble claims that he received ineffective assistance of trial counsel when his attorney failed to use the Warning Form, allegedly indicating Tremble's prior invocation of the right to counsel, to seek the suppression of his statement. He also claims that he received ineffective assistance of appellate counsel when his attorney failed to raise this issue in his direct appeal. In order to establish ineffective assistance of counsel, a petitioner must show that his "counsel's performance was deficient" because it "fell below an objective standard of reasonableness" and that he was prejudiced due to counsel's ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Defense counsel's strategic choices are granted a "high level of deference" under the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Davis v. Lafler*, 658 F.3d 525, 538 (6th Cir. 2011) (*en banc*) (quoting *Strickland*, 466 U.S. at 689).

Tremble bears the burden of establishing that his counsel's performance was deficient, *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012), and he has failed to present

sufficient evidence to meet this burden. Again, the Warning Form does not indicate what time of day it was administered, and thus it does not by itself establish that Tremble's counsel was deficient.[7] It is only when the form is coupled with Tremble's allegation that it was signed at 4:05 a.m. that the document has any relevance. Tremble never sought an evidentiary hearing to establish the circumstances surrounding the signing of the form,[8] nor has he ever submitted an affidavit supporting his claim. He simply attempted to transform argument into evidence. Unfortunately, the district court fell prey to this strategy and mistakenly relied upon Tremble's allegation to find that Tremble was entitled to relief on these ineffective assistance claims.

Tremble has not established that it was objectively unreasonable for his counsel to have failed to use the Warning Form at the suppression hearing or on appeal. Because Tremble has failed to establish that the performance of his trial or appellate counsel was deficient, he is not entitled to *habeas* relief on his ineffective assistance of counsel claims.

V.

For the reasons provided above, we reverse the judgment of the district court and deny Tremble's petition for *habeas* relief.

---

[7]Given the evidence submitted belatedly by the State—indicating that the Warning Form was signed at his arraignment at 4:05 p.m. after Tremble's confession—it appears likely that it would have been a pointless exercise for either trial or appellate counsel to have introduced the Warning Form. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

[8]Nor does he seek an evidentiary hearing under 28 U.S.C. § 2254(e)(2) on appeal. In any event, he cannot meet the criteria for obtaining an evidentiary hearing since the Warning Form was a matter of public record as of July 28, 1997, and Tremble was aware of it from the time of its signing.