NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0179n.06

No. 16-3177

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Mar 23, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GREGORY ALLEN MAYS, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | |
| | ) | |

BEFORE: BOGGS, ROGERS, and COOK, Circuit Judges.

BOGGS, Circuit Judge. Gregory Mays was arrested in 2014 in a sting operation designed to catch sexual predators who prey on underage children. After his arrest, he was brought to a local police station where he was interviewed by police investigators. During that interview, Mays asked the officers, "I really should have a lawyer, huh?" Officers responded that he had the right to an attorney, but Mays did not press the issue further. He ultimately signed a search-waiver form authorizing police to access the contents of two cell phones that Mays carried with him when he was arrested. Police discovered images of Mays and an underage female engaged in sexual activity, which Mays had sent to others. Police subsequently charged Mays with two counts pertaining to the enticement of a minor and the production of child pornography. Mays filed a preliminary motion in district court seeking to suppress the images taken from his phone as well as several of the incriminating statements he made during

his interrogation, arguing that (1) he did not voluntarily waive his Fourth Amendment rights because he could not read the search-waiver form that he signed; and (2) he made an unambiguous request for counsel, which was ignored. The district court denied his motion, and Mays entered a conditional guilty plea that preserved his right to challenge the district court's denial of his suppression motion on appeal. This is that appeal. For the following reasons, we affirm the district court's denial of Mays's suppression motion.

I

A

In April 2014, appellant Gregory Mays posted an ad in the "Casual Encounters" section of the online classifieds website Craigslist. He sought a "[s]ubmissive and ready" female who desired to be "used and taken advantage of" and "be made to do many things." The ad specified that he was open to all fantasies, ages, and races, but preferred "no games[,] just new experiences."

On April 16, 2014, an Alliance, Ohio Police Department officer, posing as a fourteen-year-old girl named "Ashley," responded to the ad by email. Although she identified herself as an underage minor, Mays showed interest and began emailing her. The two exchanged messages for several weeks, during which Mays repeatedly asked to meet up with "Ashley" and inquired about her sexual experiences. Several of the more explicit messages from Mays included descriptions of the various sexual acts Mays intended to perform, including promises that she would be "tied up and violated." They also began communicating via text message, leading Mays to frequently encourage "Ashley" to delete all incriminating text messages from her phone.

On May 8, 2014, the two agreed to meet at "Ashley's" home to engage in sexual activity. On the day of their proposed rendezvous, Mays texted and called "Ashley" several times to

express concern about getting caught by her neighbors and to ask for directions. When Mays arrived in the parking lot outside her home, he was immediately arrested by Alliance police. Upon the arrest, officers read Mays his *Miranda* rights and discovered two cell phones and a condom in his vehicle. The vehicle was towed, and officers confiscated the items found inside as part of a routine inventory search.

The officers brought Mays and the confiscated cell phones to the Alliance Police Department, where he was placed in what detectives call a "soft" interview room. Equipped with comfortable furniture, a coffee table, and water, the room was designed to set suspects at ease in order to elicit incriminating information. It worked. Detectives read Mays his *Miranda* rights for a second time and presented him with a *Miranda* waiver form, which he quickly signed. Mays openly discussed his plans to meet up with "Ashley" as well as his interactions with another juvenile female. At some point later in the interview, the detectives presented Mays with a consent form for the search of his two cell phones. The detectives explained what the form meant, including that anything taken from his phones could be used against him in a criminal prosecution.

Before he could finish signing the form, however, Mays remarked aloud "I really should have a lawyer, huh?" The detectives indicated that they would have no problem providing Mays with an attorney if he requested one. This exchange triggered a prolonged colloquy between Mays and the detectives that covered a variety of subjects. At one point during that conversation, the detectives presented Mays with a printed copy of his Craigslist ad and asked him if he could identify it. Mays responded that he could not tell without his glasses, which were left in his car. The officers never provided Mays with his glasses. Instead, they pressed him to finish signing the search-waiver form, telling Mays, "There's [sic] no games here. You want to

talk, talk." Mays ultimately relented, remarking "I think lawyers are a waste of money," and signed the search-waiver form. At no point did Mays complain about being unable to read either the *Miranda* form that he was presented at the start of his interview or the search-waiver form. A subsequent search of the phones revealed that, from June 14, 2013 through July 23, 2013, Mays produced digital photographs and videos of himself engaged in sexually explicit conduct with another minor female, which he later sent to others.

B

Mays was ultimately charged with sexual exploitation of children for the images found on his phone, in violation of 18 U.S.C. § 2251(a), and coercion and enticement of a 14-year-old girl to engage in illicit sexual activity, in violation of 18 U.S.C. § 2422(b). Mays filed several motions to suppress the information gathered from his interview with Alliance Police detectives. Of relevance to this appeal, he argued (1) that he did not voluntarily consent to the search of his cell phones because he could not read the forms he was signing, and (2) that he had unequivocally requested the presence of a lawyer, which the detectives did not provide. The district court held an evidentiary hearing and denied Mays's motion on the record:

> Well, the Court has listened carefully to testimony, reviewed the exhibits, listened to the argument of counsel. I'm denying the Defendant's motion to suppress. I guess there are really two aspects. So first, I find that under the total[ity] of the circumstances, Mr. Mays' statements were voluntary.
>
> First, he unquestionably was advised orally and in writing of all of his Miranda rights. He never indicated he couldn't read the forms or understand the question—the advice of rights. There was no physical coercion by the officers or in the environment. It's a very comfortable room. He had water. It only went for about an hour. Obviously, no show of threats of any force, and Mr. Mays seems comfortable throughout. And at times, he gets up and even points out how to access his cell phones. So the statements were voluntary.

The only issue, substantial issue I see is whether at or around Page 58 of the transcript, sort of in the middle of the interview, whether Mr. Mays makes an unequivocal request for counsel, which the officers ignored, and I find that that did not occur. First, there was no unequivocal request for counsel. Mr. Mays asks a question. Specifically, to reflect it on the transcript, "I really should have a lawyer, huh?" And Detective Rummell immediately responds, "You can do that at any time." And Detective Welsh says, "You want a lawyer, you can ask for a lawyer," which is a absolutely correct response. And then Mr. Mays drops the subject, continues talking about various things, and then the only other reference to a lawyer is at Page 62, which is probably a minute or so later, when Mr. Mays, on his own, says, "You know, like I said, attorneys are basically a waste of money." Detective Rummell says something. It's not clear. And Mr. Mays continues, "They are, I mean they're so crooked. They are—they're there to help you." And that's the last discussion of a lawyer.

So I find that Mr. Mays asked a question, the officers gave a very appropriate response. Mr. Mays never said, "I want to stop. I want a lawyer now. Can I call a lawyer?" He drops it after expressing an opinion. He doesn't think much of lawyers. And that's the last mention of it.

I don't find anything in anything that either of the officers, Officer Rummell or Officer Welsh, said or did that would constitute inappropriate effort to pressure Mr. Mays to continue the questioning, not to get a lawyer or anything of the like.

So I find that his Sixth Amendment right to counsel was not violated by either of the officers. So I find no Fifth Amendment violation, nor Sixth Amendment violation. So I'm denying the Defendant's motion.

Mays subsequently entered into a conditional plea agreement whereby he pleaded guilty to both counts of the indictment, but reserved his right to appeal the district court's denial of his suppression motion. The agreement stipulated that his total offense level under the Sentencing Guidelines was 35 and that his offenses carried a mandatory minimum of 180 months of imprisonment. On February 9, 2015, the district court held a sentencing hearing and concluded that Mays's criminal-history category was II, which combined with his total offense level yielded an advisory Guidelines range of 188 to 235 months of imprisonment. After reviewing the

sentencing factors contained in 18 U.S.C. § 3553(a), the district court sentenced Mays to 210 months of imprisonment, to be followed by 10 years of supervised release and a $200 special assessment.

Mays brings this timely appeal of the district court's denial of his suppression motion, again raising the Fourth and Fifth Amendment arguments that he presented before the district court.

II

We adjudicate an appeal from the denial of a motion to suppress under a mixed standard of review, analyzing the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013) (citation omitted). In addition, we construe the evidence in the light most favorable to the government. *Ibid.*

A

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well-settled law that a "search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (omission in original) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception permits police to search a suspect with the suspect's consent. *Ibid.* Valid consent must be given freely and voluntarily, which the court will determine by examining the totality of the circumstances. *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996) (citing *Schneckloth*, 412 U.S. at 226). It is the government's burden to prove that "consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Courts should examine several

factors to determine whether consent was valid, including "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Riascos-Suarez*, 73 F.3d at 625 (citations omitted).

As an initial matter, Mays argues that the district court's holding with respect to his Fourth Amendment claim is insufficient to satisfy Rule 12(d) of the Federal Rules of Criminal Procedure. Rule 12(d) requires a district court deciding a pretrial motion to "state its essential findings on the record." As Mays correctly notes, the district court's statements on the record are almost exclusively focused on Mays's Fifth Amendment suppression claim. At no point does the court refer to the Fourth Amendment or the contested search-waiver form. The district court does, however, analyze Mays's *Miranda* waiver, using the same voluntariness approach utilized in a Fourth Amendment consent analysis. Much of this language, particularly the court's observation that Mays "never indicated he couldn't read the form or understand the question," would apply with equal force to Mays's Fourth Amendment argument. We need not reach this issue, however, as our case law makes clear that we can affirm a district court's denial of a motion to suppress "if the district court's conclusion can be justified for *any reason supported by the record*, including reasons not considered by the district court." *United States v. Sain*, 421 F. App'x 591, 593 (6th Cir. 2011) (emphasis added) (citation omitted).

The record makes clear that Mays's Fourth Amendment argument is meritless. Mays signed the search-waiver form in three separate places. At no point did he inform the officers that the print on the form was too small to read, in sharp contrast to his response to the printed copy of his Craigslist ad. It stands to reason that, if Mays felt comfortable telling the

investigators that he was unable to read the Craigslist ad, he would have felt just as comfortable telling them that he could not read the search-waiver form. That he never did complain suggests that Mays found the form to be legible. The police never threatened Mays; in fact, the record reflects that police intentionally adopted a "good cop" approach when they placed Mays in a "soft" interview room and engaged him in casual conversation. At one point, the district court noted, Mays even volunteered to show his investigators how to operate his cell phones. These are not the actions of a man who was coerced or tricked into signing a waiver of his Fourth Amendment rights. Because Mays knowingly and voluntarily signed the search-waiver form, we affirm the district court's denial of his Fourth Amendment challenge.

B

Mays's Fifth Amendment argument is equally meritless. The Fifth Amendment protects "persons suspected or accused of crime . . . [from] inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak" by informing him of his rights and honoring them once exercised. *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). The right applies to persons "in all settings in which their freedom of action is curtailed in any significant way," including custodial interrogation. *Ibid.* If, during questioning, an "individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. Consequently, "any statement taken after the person invokes his privilege cannot be other than the product of compulsion" and is thus barred from being introduced against him in a criminal proceeding. *Ibid.*

The consequence of such a "'rigid' prophylactic rule" is that courts require a suspect to "unambiguously request counsel." *Davis v. United States*, 512 U.S. 452, 458–59 (1994). "[A] statement either is such an assertion [of the right to counsel] or it is not." *Smith v. Illinois*,

469 U.S. 91, 97–98 (1984) (second alteration in original) (citation omitted). We have held that "a suspect must assert his [right to counsel] with sufficient clarity that a reasonable officer would perceive it as such under the circumstances." *Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008) (citing *United States v. Hurst*, 228 F.3d 751, 759 (6th Cir. 2000) (holding that the *Davis* standard for invocation applies equally to the right to counsel and the right to remain silent)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (holding that "there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel"). "Simply mentioning the prospect of talking with an attorney, or waiting to talk until one is present, is not sufficient to put the agent on notice that a suspect has invoked his right to remain silent" or his right to an attorney. *United States v. Amawi*, 695 F.3d 457, 485 (6th Cir. 2012). Thus, where a suspect merely "makes an ambiguous or equivocal reference to an attorney[,] there is no requirement that law enforcement cease questioning." *Ibid.* (quoting *United States v. Montes*, 602 F.3d 381, 385 (5th Cir. 2010)).

In *Davis*, the Supreme Court dealt with a suspect who remarked, "Maybe I should talk to a lawyer." *Davis*, 512 U.S. at 462. There, the Court held that the request was not sufficiently unambiguous to be a request for counsel. *Ibid.* In *Amawi*, we dealt with a suspect who, after arrest but prior to boarding a flight to the United States, asked his prospective interviewers if there was a lawyer onboard. *Amawi*, 695 F.3d at 484. We similarly held that simply inquiring about the presence of an attorney "is neither a clear nor unequivocal invocation of the . . . right to counsel." *Id.* at 485. In *United States v. Delaney*, 443 F. App'x 122 (6th Cir. 2011), we held that the inquiry, "I think I should talk to a lawyer, what do you think?" did not constitute an unambiguous request for counsel. *Id.* at 130. In *Delaney*, just as in this case, the interviewing

officers informed the suspect that he was free to have an attorney if he desired one, but the suspect chose not to press the issue. *Ibid.*

Mays points to the Supreme Court's decision in *Smith*, where the Supreme Court held that a suspect unequivocally invoked counsel when he stated, in response to a question asking whether he wanted an attorney, "Yeah and no, uh, I don't know what's what, really." 469 U.S. at 93; *see also* Appellant's Br. at 22–23. Mays misreads *Smith*, however, by inadvertently focusing on the wrong statement in the suspect's exchange with interrogating officers. The Court in *Smith* largely focused on the suspect's earlier conversation with interrogators when he stated, "Uh, yeah. I'd like to do that" in response to a question asking whether he desired a lawyer. 469 U.S. at 93. *Smith* was concerned with whether the suspect's subsequent "yeah and no" statement, which clearly *was* equivocal and ambiguous, could be taken into account in analyzing the ambiguity of his first statement. The Court in *Smith* held that, because the first statement was unequivocal, the interrogation should have ceased and that therefore the second, more ambiguous statement could not be taken into account. *Id.* at 96–99. That holding has no bearing on a case such as this, where our analysis turns on the ambiguity of a single statement.

Stated simply, Mays's statement that "I really should have a lawyer, huh?" most strongly mirrors the language that courts found to be ambiguous and equivocal in *Davis*, *Amawi*, and *Delaney*. Merely asking the interviewing officers whether one should have an attorney present, as Mays did, is not an unambiguous and unequivocal request for legal representation. Nor did the investigators' responses suggest that they were improperly pressuring Mays to continue with the interrogation. On the contrary, one of the officers expressly told Mays "You want a lawyer, you can ask for a lawyer." At no point did Mays make a statement "with sufficient clarity that a reasonable officer would perceive it as [a request for counsel] under the circumstances."

*Franklin*, 545 F.3d at 414 (citation omitted).  Because Mays did not make an unambiguous and unequivocal request for legal representation, we affirm the district court's denial of Mays's suppression motion on this ground as well.

III

Appellant Mays was repeatedly informed of his constitutional rights, but chose to waive them.  We therefore AFFIRM the decision of the district court to deny Mays's suppression motion.